No. 20,627.

GERTRUDE BARTON, *Appellee*, V. FRANK M. BARTON, *Appellant*.

SYLLABUS BY THE COURT.

1. DIVORCE — *Decree for Payment for Maintenance — Contempt — Divorced Wife May Maintain Action.* A proceeding to punish for contempt for willfully refusing to comply with a decree of divorce in which it was adjudged that the defendant should pay the expenses of the litigation and certain sums towards the support of his child is remedial in its nature and may be instituted and conducted by the plaintiff in the case out of which the contempt arose.

2. SAME—*Contempt Proceedings—Title of Action.* Such a proceeding may be entitled as in the original cause or brought as an independent proceeding, the important feature, in either case, being that the person charged with the violation of the judgment of the court shall have reasonable notice of the proceeding and a fair opportunity to explain or defend his refusal or action.

3. SAME—*Contempt Proceedings — Evidence.* The evidence examined and held to be sufficient to uphold the decision of the trial court that the defendant had the ability to make the required payments and had willfully refused to comply with the orders and decree of the court.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed February 10, 1917. Affirmed.

*F. W. Sturges,* and *Fred W. Sturges, jr.,* both of Concordia, for the appellant.

*Park B. Pulsifer, Charles L. Hunt,* and *Clyde L. Short,* all of Concordia, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal by Frank M. Barton from a decision made January 14, 1916, adjudging him guilty of contempt in willfully failing to make payments for expenses and the support of a minor child, decreed in a divorce action against him on April 27, 1914. The decree provided that the defendant should pay $75 by October 1, 1914, $100 by April 1, 1915, and $75 on the first days of October and April of each year thereafter. No part of these payments was ever made, and at the instance of the plaintiff the defendant was attached for contempt.

On this appeal he insists that the contempt feature of the proceeding is criminal in its nature and should have been prosecuted in the name of the state by the county attorney or attorney-general. The primary object of the proceeding was to protect private rights; that is, to compel compliance with the decree of the court rendered in a civil action, and only incidentally to vindicate the authority of the law. While the punishment of such contempt takes on a criminal phase, it is really remedial in character and is sometimes designated as a civil contempt. (*O'Brien v. The People,* 216 Ill. 354; *The People ex rel. Negus v. Dwyer,* 90 N. Y. 402; *King et al. v. Barnes,* 113 N. Y. 476; *People ex rel. Stearns v. Marr,* 181 N. Y. 463.) Sometimes the proceeding is treated as a part of the case out of which the contempt arises, and in others it is treated as an independent proceeding; but, however it may be entitled, the proceeding may be instituted by the aggrieved party in the original cause where its purpose is to protect and enforce the private rights of parties litigant. (*Cunningham v. Mortgage Co.,* 57 Kan. 678, 47 Pac. 830; 9 Cyc. 35.) The form of the proceeding is not of great consequence where the defendant, as here, had reasonable notice of the proceeding and was given a fair opportunity to explain and defend against the charge of contempt.

The principal contention is that the evidence in the case does not sustain the ruling of the court that the defendant

was guilty of willful contempt nor the order committing him until he should comply with the judgment of the court or until he is discharged by the court.  The defendant can not, of course, be committed for the failure to do something which is beyond his power.  The general rule is that a party may be imprisoned for disobedience of a mandate, order or judgment of the court if it is reasonably within the power of the contemner to perform it.  (*In re Burrows, Petitioner*, 33 Kan. 675, 7 Pac. 148; 9 Cyc. 53.)  Evidence was offered tending to show that the defendant could have met the requirements of the judgment of the court ordering payment of alimony and a contribution towards the support of his infant child.  There was testimony to the effect that the defendant is a man about thirty-four years of age, is a jeweler or watchmaker by trade, that he has no property and no means other than the wages earned at his trade.  According to the testimony he was capable when at work of earning from $15 to $30 a week, but he did not remain employed very long in any one place.  After the divorce he held various positions for short periods in different parts of the country, the longest period being six months at Parsons, Kan.  The testimony of the defendant and of his father was to the effect that since the divorce he has been employed less than half of the time, being sick part of the time; that his own earnings had been insufficient to support him, and he had been aided by his parents; and further, that he had no natural ability to make money.  The plaintiff further testified that defendant had never supplied her with any money since the divorce; that he had been earning and could earn from $25 to $30 a week, and particularly, that he was earning $25 a week while at Le Mars, Iowa.  She further testified that in some correspondence with her from Le Mars he asked her to visit him, offering to pay her railroad fare and to pay her $50 when she went back, but that she did not make the trip. While the defendant was at. Le Mars the plaintiff also had correspondence with his employer, and the defendant testified that as a result of it he had been discharged.  There was also some correspondence between plaintiff and defendant while the latter was at Parsons, in which he asked his wife to come and live with him and, defendant testified, he intended to support her out of his wages.  There was testimony that the defend-

ant had been addicted to drink and had taken the Keeley cure, but had afterward gone to work, and becoming sick, had returned to the home of his parents at Jamestown to recover, and was about to take a position at Arkansas City when he was attached for contempt. On the whole testimony it is reasonably clear that defendant had the ability to earn sufficient to maintain himself and to pay the allowances made by the court for the expenses of the litigation and the support of the child. His offer to pay money to the plaintiff as well as her railroad fare to and from the place where he was living, upon certain conditions, and the statement that he intended to support her by his earnings, tended to show that he had the ability to make the required payments. When he was earning from $15 to $25 per week he might have very well contributed one-half of his wages to the payment of alimony. He stated that his own maintenance required all of his earnings, but it would seem that the natural parental impulse would have prompted him to divide his earnings with his own child. It is argued, and cases are cited to the effect that the court can not compel the defendant to find employment or to pay alimony when he has no money with which to make payment. That is hardly the question for determination. The one we have here is: Was there evidence which fairly tended to support the finding of the court that the defendant had the ability to make the payments required by the judgment and had willfully refused to comply with it. The evidence appears to be sufficient to sustain the finding and judgment of the court, and it is affirmed.