No. 33,915

Ardis Johnson, *Appellee*, v. Charles Johnson, *Appellant*.

(84 P. 2d 888)

Opinion filed December 10, 1938.

*C. E. Carroll* and *A. E. Carroll*, both of Alma, for the appellant.
*Hugh MacFarland*, of Topeka, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This was an action brought by a wife against her husband for divorce and alimony and also for support money for their only child.

Personal service was had on the husband, but he made no appearance and judgment was rendered in favor of the wife for divorce and $3,500 alimony, to be paid in monthly installments of $35 each, and $25 per month for the support of the child. The defendant, very shortly after the judgment was rendered, moved the court for

a new trial as to the alimony, which motion was overruled. A few days thereafter an accusation for contempt of court was issued, which was based upon an affidavit made by the wife, and showed the disregard by the defendant of the order of court as to the first payment due thereunder on the 1st day of February, 1937. No service was made of this citation because the sheriff was unable to find the defendant in Wabaunsee county. Another accusation in contempt was issued February 2, 1938, based on another affidavit made by the plaintiff, which showed that only $30 had been paid on said order in the eleven or twelve months after the judgment was rendered. To this citation the defendant filed an answer admitting the payment of $30 and alleging that he was wholly without property or money since the judgment was rendered and without employment and had been dependent entirely on his parents and sisters and brothers for his own food and clothing since that time. He alleged further that he had attempted to borrow money to pay on this judgment and had done everything in his power to comply with the judgment of the court, and promised that he would pay all money possible into the court for the support and maintenance of the child and to apply on the alimony. To this the plaintiff filed a general denial by way of reply.

On the hearing of the accusation the plaintiff introduced the evidence of the clerk of the court showing the payment of the $30 and the issuance of the citations. The defendant then testified in his own behalf, admitting the payments made and stating that he had no property of any kind, was not employed and had been unable to get employment since the date of the judgment rendered or make any further payments upon the judgment. On cross-examination he told where he had been during the eleven or twelve months intervening, seven months of which he had spent in Tennessee trying to sell horses and other property belonging to his father, and later he had traveled to several places trying to get work and had not succeeded and had been of late living with his sister in Topeka. The transcript of the divorce proceedings was offered in evidence, which showed the earning capacity of the appellant prior to the divorce was approximately $150 a month and about the time of their separation he received from his father $700 in closing up a previous business transaction.

The trial court commented at considerable length on the testimony. Both parties speak of such comment as being findings of

fact, which are to the effect that the court did not believe the testimony of the defendant, although there was no contradictory testimony, and the court found the defendant guilty of indirect contempt of court and ordered that the defendant, Charles Johnson, be committed to and confined in the Wabaunsee county jail, at Alma, Kan., until he purge himself of such contempt. The defendant filed a motion for new trial on this matter, which was overruled on February 14, 1938, and from this judgment and ruling the defendant has taken an appeal.

Appellant urges that there is no evidence whatever showing indirect contempt, the only evidence being that of the appellant himself showing that he had no property, business or employment and did not have any during the eleven months after the order was made, and that his failure was not willful, contemptuous or intentionally disobedient, citing *Wohlfort v. Wohlfort,* 116 Kan. 154, 225 Pac. 746, where it was said:

"But an order committing to jail is the exercise of the ultimate power of a court of equity, and the prudent chancellor is careful that there be no mistake in its use. It should be used only when it is clear (1) that the original order is reasonable, (2) that the husband is able to comply with it without undue hardship, and (3) that his refusal to comply with it is willful to such a degree as to be contumacious, amounting to contemptuous disobedience. . . . If he does not have the money, and has no property which he can readily convert into money, it is obviously improper to commit him until the money is paid. Such a commitment under those circumstances would be indefinite imprisonment, from which the husband could never release himself." (pp. 163, 164.)

This was where the husband had property and this court reversed the commitment and ordered the property to be sold and the proceeds applied in accordance with the order. It was held in connection with the above statement that—

"It is the duty of a husband to make reasonable provision from his money, property, or labor, for the maintenance of his wife. . . .

"The court may, in a proper case, commit a husband for his refusal to provide maintenance for his wife, even though to do so requires him to labor." (Syl. ¶¶ 3, 4.)

Appellant also cites *Davison v. Davison,* 125 Kan. 807, 266 Pac. 650, where it is said in the opinion that—

"It need hardly be repeated that courts have inherent power to enforce their lawful orders by contempt proceedings, and may send recalcitrants to jail until such proper orders are complied with, but that elementary doctrine implies that the court's orders can be obeyed. Since the sheriff has seized the automobile and the money is gone, the incarceration of this hapless petitioner

until she surrenders the car and produces the money is tantamount to life imprisonment, and therefore void." (p. 816.)

There is no doubt in the case at bar that the trial court concluded that the evidence implied that the court's order could be obeyed, even if, as held in the Wohlfort case, that the duty of supporting his family might require the husband to labor.

Appellant relies strongly upon the fact that there was no evidence contradicting what the appellant said concerning his inability to pay anything on the judgment for alimony or for the support of his child. The evidence shows he was and had been in good health, was a young man of reasonable intelligence, that he had food and clothing furnished him by his people. Was it reasonable, or even the truth, that he could not spare any of that food or earn anything for that young child during eleven months? He said he could not, and the court failed to give such statement credence.

It was held in *Kallail v. Solomon,* 146 Kan. 599, 72 P. 2d 966, that—

"A court or jury is not required to believe the testimony of a witness or witnesses merely because there is no direct evidence to contradict the same." (Syl. ¶ 2.)

(See, also, *Peoples National Bank v. Diven,* 135 Kan. 400, 10 P. 2d 883; and *Smith v. Lockridge,* 145 Kan. 395, 65 P. 2d 345.)

*In re Peters,* 124 Kan. 455, 260 Pac. 975, was originally a divorce case followed by an attachment for contempt and habeas corpus proceedings, and it was said in the opinion denying the writ of habeas corpus that—

"He is living with his father, who pays him small wages, but his attitude as revealed by the testimony shows a lack of purpose to pay anything more on the alimony awarded. The court, after hearing the evidence, manifestly found that he was not endeavoring to comply with the order, but on the other hand was seeking to evade further payments. Even if he is actually unable to make the payments as ordered, his willful and contumacious refusal to make compliance to any extent with the order affords ground for attachment for contempt." (p. 457.)

In *Barton v. Barton,* 99 Kan. 727, 163 Pac. 179, which was a divorce case, it was said in the opinion:

"He stated that his own maintenance required all of his earnings, but it would seem that the natural parental impulse would have prompted him to divide his earnings with his own child." (p. 730.)

It does not require very strong contradictory evidence to convince a court that a father of an infant child is willfully and contemp-

tuously disobedient of an order of the court requiring him to furnish something for the support of such child, which he deliberately failed to do for more than eleven months. The punishment imposed by the trial court for the indirect contempt in the way of imprisonment in the county jail until he purge himself of contempt is not a life imprisonment, but its purpose is to impress him with a full duty of citizenship in willingly endeavoring to obey the law as applied to his case.

The judgment is affirmed.