No. 40,459

EUDORA GOETZ, *Appellant*, v. ALBERT JOHN GOETZ, *Appellee*.

(309 P. 2d 655)

Opinion filed April 6, 1957.

*C. H. Morris*, of Wichita, argued the cause, and *Robert F. Bailey* and *Willard J. Kiser, Jr.*, both of Wichita, were with him on the briefs for appellant.

*Wesley E. Brown* and *Elwin F. Cabbage*, of Hutchinson, argued the cause, and *D. C. Martindell, W. D. P. Carey* and *Edw. B. Brabets*, of Hutchinson, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Robert C. Foulston* and *Robert M. Siefkin*, of Wichita, were with them on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This appeal arises out of a contempt of court proceeding in a divorce action, then pending on appeal in this court as case No. 40,326. Plaintiff was found guilty of contempt on June 27, 1956, of refusing to comply with the order of the district court of Sedgwick County entered March 12, 1956, granting the defendant the right of visitation of their two minor children on alternate week

ends away from their home and to have their care and custody for the first half of the summer vacation beginning May 28, 1956. Pursuant to the judgment of conviction, plaintiff was sentenced on June 29, 1956, to immediate confinement in the county jail for a period of 90 days. On June 30, 1956, following plaintiff's sentence and imprisonment and upon failure of the district court to set a bond for appeal and for stay of execution, this court ordered that further proceedings against her be stayed and that she be released from custody pursuant to G. S. 1949, 20-1205 upon her giving bond in the amount and upon the conditions specified. The plaintiff has appealed from her conviction of contempt of court and from the sentence of confinement imposed thereunder.

On January 12, 1957, this court affirmed the judgment of the district court entered March 12, 1956, granting the defendant the divorce; sustained its order dividing the property of the parties, and concluded that it did not abuse its discretion with respect to its child custody and visitation order outlined above. (*Goetz v. Goetz,* 180 Kan. 569, 306 P. 2d 167.)

The pertinent facts as shown by the record necessary to the disposition of the questions presented, are as follows: Pending the appeal of the divorce action plaintiff filed in this court, on April 4, 1956, her application to stay all proceedings in the district court and particularly the order concerning the custody of the minor children and the right of visitation by the defendant. This application was denied April 27, 1956.

On May 14, 1956, and pursuant to G. S. 1949, 60-3322, plaintiff filed with the clerk of the district court a supersedeas bond in the penal sum of $50,000, which was approved by the clerk and by the trial judge who tried the divorce action, the condition of which was,

". . . that the said Eudora Goetz will abide the judgment and release any impounded monies and sign conveyances and transfers of real and personal property, if the judgment of the trial court be affirmed in whole or in part, and pay the costs."

On June 1, 1956, the defendant instituted the contempt proceedings in the district court by filing a motion for citation, obtaining an order for citation to issue, causing citation to show cause to be served upon plaintiff, and filed a verified accusation in contempt charging and accusing the plaintiff of knowingly and willfully disobeying and violating the order of the court as follows: That plaintiff refused to permit defendant to have custody of their two minor

sons at the times specified in the March 12, 1956, order of the court; that plaintiff was fully aware of the order of the court; that she had been in attendance of the court at the time the order was made, and that plaintiff stated publicly she did not intend to comply with such order. The prayer was that plaintiff be adjudged guilty of direct and indirect contempt and punished by fine or imprisonment and that she be ordered to pay defendant his costs and expenses.

On June 2, 1956, plaintiff filed in this court her second application to stay proceedings in the district court pending the appeal of the divorce action in which she alleged the filing and approval of the supersedeas bond in the sum of $50,000; the pendency of the contempt proceeding in the district court; and, that her appeal was taken in good faith to secure a review of all of the orders of the district court and particularly to prevent any injustice being done to the minor children. On June 8, 1956, this court denied plaintiff's second application for stay of proceedings and directed that compliance by plaintiff with the order of the district court relating to the custody of the minor children would not in any manner prejudice her right to prosecute her appeal.

On June 11, 1956, plaintiff entered her special appearance in the contempt proceeding and objected to the jurisdiction of the district court pending the appeal of the divorce action and moved to dismiss the contempt citation and to strike from the files the motion for citation, accusation in contempt, citation to show cause and the order for citation to issue for the reason that such papers showed on their face the charge of contempt was based upon plaintiff's failure to comply with the order of the district court, which was suspended by her supersedeas bond and which relieved her from compliance with such order during the pendency of the appeal.

On June 12, 1956, plaintiff filed her answer to the accusation in contempt. She renewed her motion to dismiss all proceedings of contempt; she denied all of the allegations contained in the accusation; she alleged that her conduct with respect to the order appealed from had been respectful to the court and was based upon her belief that her appeal and the supersedeas bond did not require her compliance with the order complained of by the defendant. At the suggestion of the district court and on June 12, 1956, plaintiff filed a motion to obtain a temporary order for child custody, visitation and support of herself and the minor children pending the appeal.

The journal entry shows that on June 18, 1956, the district court

sustained plaintiff's oral motion for separate hearings on the change of custody and visitation rights, and of defendant's contempt accusation. Upon trial to the court, plaintiff's motion to change custody and visitation rights was denied, and her motion to dismiss and to strike all the contempt proceedings was overruled. On June 27, 1956, defendant's accusation in contempt was heard, resulting in a finding by the district court that plaintiff was guilty of contempt of court, and it ordered that sentence be stayed until June 29, 1956, to permit her to purge herself from the contempt and from the necessity to appear if she complied with the existing orders of the court, otherwise to appear in court June 29, 1956, for imposition of sentence.

On June 28, 1956, plaintiff filed a motion for a new trial and gave notice of her intention to appeal from her conviction of contempt. She requested the district court to fix bond pursuant to G. S. 1949, 20-1205 to stay execution of its judgment. Bond was not fixed by the district court after the imposition of sentence, and plaintiff's motion for a new trial was overruled on July 26, 1956.

On June 29, 1956, the plaintiff appeared in court where she was given an opportunity to show whether she had purged herself of contempt by delivering the minor children to the custody of the defendant. Plaintiff made a statement to the court to the effect that the children were enrolled in a community music program; that they had one week of the program left; that she was willing they be with defendant for the remainder of the summer if they could finish their concert on the following Friday evening, and that she did not wish to irritate the court or any individual, after which the following proceedings occurred:

"The Court: The court finds that you have not purged yourself of the contempt of judgment in this case. I will ask you one more question. Are you at this time willing to turn these children over to the custody of their father without further difficulty? Mrs. Goetz: As of today? The Court: As of this moment. Mr. Morris: May I ask a question? The Court: You may not. Mrs. Goetz: Well, I have no choice. If your Honor, of course, says that is what I shall do, I will do it. I have no choice. It is not my wish. The Court: On finding of guilty of contempt you are sentenced to the county jail for ninety days. Sentence is to begin immediately. Take her immediately."

Plaintiff was immediately confined in the county jail in compliance with that order although a commitment for her imprisonment was never issued by the clerk of the district court. Immediately following her confinement, the district court authorized the

defendant to go to the home and take custody of the children, and, if necessary, to procure the assistance of the sheriff.

On June 29, 1956, plaintiff appealed from the order (1) overruling her motion for a temporary order for child custody and visitation rights; (2) overruling her motion to dismiss the contempt proceedings and to strike from the files all such proceedings; (3) overruling her motion to dismiss at the close of the evidence of the accusation in contempt; (4) finding her guilty of contempt of court, and (5) all orders made on June 29, 1956, imposing sentence upon her. Thereafter and on August 24, 1956, a journal entry was filed showing the proceedings had and the sentence imposed upon the judgment of conviction.

Plaintiff first asserts that the district court lost jurisdiction to enforce the child custody and visitation order entered March 12, 1956, and that it erred in refusing to dismiss and to strike from the files the contempt proceedings, the contention being that since her appeal was timely made (G. S. 1949, 60-1512) the supersedeas bond stayed such order, and, consequently, that court did not have power to find the plaintiff guilty of contempt. Plaintiff cites and relies upon *Ex parte Wrather,* 139 Texas 47, 161 S. W. 2d 774; *McNealey v. Rouse,* ___ Mo. ___, 264 S. W. 383; *Wilkins v. Corey,* 172 Minn. 102, 214 N. W. 776; *Starns v. Starns,* 174 La. 743, 141 So. 447; and, *Foster v. Foster,* 5 Cal. (2d) 669, 55 P. 2d 1175. We have examined these authorities but will not review them in this opinion since we have concluded they are inapplicable in view of the clear and unambiguous language of G. S. 1949, 60-3322 and G. S. 1955 Supp. 60-1510.

A resort to the provisions of G. S. 1949, 60-3322 clearly indicates that a supersedeas bond executed and filed pursuant to that section only operates to stay execution of any judgment or final order sought to be reversed: First, when such judgment or final order directs the payment of money; second, when it directs the execution of a conveyance or other instrument; third, when it directs the sale or delivery of possession of real property; and fourth, when it directs the execution or delivery of documents. Insofar as the divorce decree directs the payment of money and the division of property between the parties, plaintiff's supersedeas bond (which adopts the terminology of the second and fourth paragraphs of the statute) had an authorized function to perform. However, the child custody portion of the decree sought to be reversed did not involve the pay-

ment of money by plaintiff; nor did it direct the execution of a conveyance, the execution or delivery of documents or the sale or delivery of possession of realty. Manifestly, the statute does not authorize the filing of a bond to supersede a child custody order (*C. B. U. P. Rld. Co. v. Andrews, Adm'r.,* 34 Kan. 563, 9 Pac. 213; *Heizer v. Pawsey,* 47 Kan. 33, 35, 27 Pac. 125), and the legislature wisely deemed that child custody decisions should be left to the determination of the district court pending final disposition of an appeal.

Moreover, there is another equally compelling reason why the supersedeas bond did not have the effect plaintiff contends it had. The decisions of this court are uniform and none to the contrary, that when a petition for divorce is filed and a part of the relief sought is the custody and control of minor children, jurisdiction of the district court attaches immediately over the divorce action and the future welfare of the minor children during the pendency of the action and until final disposition thereof (G. S. 1949, 60-1507; *Bennett v. Bennett,* 175 Kan. 692, 266 P. 2d 1021; *Duffy v. Duffy,* 176 Kan. 112, 114, 115, 268 P. 2d 931); that when a divorce is granted, the provisions of G. S. 1955 Supp. 60-1510 require the district court to make not only an order concerning the custody of the minor children but also to provide for their support (*Sharp v. Sharp,* 154 Kan. 175, 117 P. 2d 561; *Anderson v. Anderson,* 167 Kan. 494, 207 P. 2d 453; *Grimes v. Grimes,* 179 Kan. 340, 295 P. 2d 646); that such jurisdiction over the custody, control, support and education of such children is a continuing jurisdiction (*White v. White,* 160 Kan. 32, 159 P. 2d 461; *Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127; *Trent v. Bellamy,* 164 Kan. 438, 190 P. 2d 400; *Ramey v. Ramey,* 170 Kan. 1, 223 P. 2d 695; *Maston v. Maston,* 171 Kan. 112, 229 P. 2d 756; *Decker v. Decker,* 171 Kan. 380, 233 P. 2d 527; *Powell v. Powell,* 173 Kan. 435, 437, 249 P. 2d 630; *Jennings v. Jennings,* 174 Kan. 305, 308, 255 P. 2d 618; *Duffy v. Duffy,* supra; *Leach v. Leach,* 179 Kan. 557, 296 P. 2d 1078; *Goetz v. Goetz,* supra); and, as has been repeatedly held, an order awarding custody is not a finality—the district court has jurisdiction to modify or change any such order whenever the circumstances make such change proper, but until modified or changed, the original order fixing custody stands (*Thornbrugh v. Thornbrugh,* 175 Kan. 56, 59, 259 P. 2d 219, and cases cited above). In our opinion, the district court is not divested of such continuing jurisdiction by reason of an appeal by

either or both parties from the judgment granting the divorce and awarding custody of the minor children to one of them, and otherwise providing for their care, education and visitation, since it is elementary that the power of this court to review a child custody order on appeal is limited solely to determining whether the record clearly discloses the district court abused its discretion in making the order it made (*Travis v. Travis,* 163 Kan. 54, 58, 180 P. 2d 310; *Dodd v. Dodd,* 171 Kan. 46, 229 P. 2d 761; *Bierce v. Hanson,* 171 Kan. 422, 429, 233 P. 2d 520; *Kamphaus v. Kamphaus,* 174 Kan. 494, 497, 256 P. 2d 883; *Goetz v. Goetz,* supra).

While this court, in the exercise of its appellate jurisdiction, has the power, pending an appeal of a divorce action, to provide for the temporary custody of minor children until the determination of the appeal (*Kjellander v. Kjellander,* 90 Kan. 112, 132 Pac. 1170; *Paul v. Paul,* 121 Kan. 88, 91, 245 Pac. 1022; *Ogg v. Ogg,* 126 Kan. 310, 311, 267 Pac. 977), it denied two separate applications of plaintiff to stay the child custody order of the district court, thus it is clear such order was not stayed by the supersedeas bond nor by this court pending plaintiff's appeal. The district court had full power and authority to require compliance with this order concerning the custody and visitation of the minor children pending the appeal, and to inquire into plaintiff's reasons for failing to comply, and upon proper showing, to find her guilty of contempt. An order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed, modified or set aside by orderly and proper proceedings.

Plaintiff maintains that there was insufficient evidence to support the judgment of contempt, contending she acted upon the advice of counsel and willful intent to violate the order being entirely lacking, she could not be found guilty. We have not been persuaded. It would serve no useful purpose to detail the evidence on that point, nor extend this opinion by doing so. But suffice it to say there was ample evidence to support the judgment of contempt that plaintiff willfully refused to comply with the order of the district court. We refer to *In re Pierce, Petitioner,* 54 Kan. 519, 38 Pac. 812, where it was said:

". . . It appears that the defendant, in signing the scrip, acted upon the advice of R. A. Cameron and A. J. Jones, two reputable lawyers, whom he consulted. One of them was the late county attorney. This advice was no justification, but may be considered in the application to purge the contempt. . . ." (l. c. 522.)

The plaintiff next contends the district court erred in overruling her motion for a temporary order for child custody, visitation and support of plaintiff and the minor children pending appeal of the divorce action. In considering this point, we need only to refer to the authorities heretofore cited to the effect that the authority of this court on appellant review with respect to a child custody order is limited solely to determine whether the record clearly discloses the district court abused its discretion in making the order it made. We have reviewed the record and cannot say as a matter of law that the district court abused its discretion in refusing to change the visitation order. However, if other applications are made for that purpose, it would seem proper for the district court to take into consideration the fact that the welfare of the minor children might best be served, at least during the school year, if their custody for that period was permanently fixed in one of their parents.

Plaintiff asserts that the contempt proceedings are to be regarded as criminal in nature and are to be conducted in accordance with the principles and rules applicable to criminal cases. We have come to a contrary decision. These proceedings were in their nature to compel plaintiff to abide the order of the district court and were remedial in character to achieve that result. Their purpose was intended to coerce plaintiff to comply with the child custody order for the benefit of the defendant—so he might have the companionship of their minor sons during the first one-half of the summer vacation. To that extent they were civil in nature and were for indirect civil contempt, notwithstanding there was inherent in them a vindication of the district court's authority. However, such indirect vindication did not change their character from merely coercive and remedial into that which was solely punitive in character, although the sentence imposed so implies. (*Barton v. Barton,* 99 Kan. 727, 728, 163 Pac. 179; *Holloway v. Water Co.,* 100 Kan. 414, 421, 167 Pac. 265; *Smith v. Clothier,* 113 Kan. 47, 51, 52, 213 Pac. 1071; *State, ex rel. v. Miller,* 147 Kan. 242, 75 P. 2d 239; *Hendrix v. Consolidated Van Lines, Inc.,* 176 Kan. 101, 269 P. 2d 435; 12 Am. Jur., Contempt, § 6, p. 392; 17 C. J. S. Contempt §§ 5, 6, 7, pp. 7, 8.)

In *Barton v. Barton,* supra, the defendant in a divorce action was adjudged guilty of contempt in willfully failing to make payments for expenses and the support of a minor child. In the opinion it was said:

"On this appeal he insists that the contempt feature of the proceeding is criminal in its nature and should have been prosecuted in the name of the state by the county attorney or attorney-general. The primary object of the proceeding was to protect private rights; that is, to compel compliance with the decree of the court rendered in a civil action, and only incidentally to vindicate the authority of the law. While the punishment of such contempt takes on a criminal phase, it is really remedial in character and is sometimes designated as a civil contempt. . . ." (l. c. 728.)

In *Hendrix v. Consolidated Van Lines, Inc.*, supra, it was held:

"In a general way, civil contempt is defined as being the failure to do something ordered by a court to be done for the benefit or advantage of another party to the proceeding, that is, disobedience of a court order or decree made in behalf of a litigant. A proceeding in civil contempt ordinarily is remedial and coercive in nature, and is brought for the enforcement of private rights and remedies." (Syl. ¶ 1.)

"In a general way, criminal contempt is defined as being conduct which is in disrespect of a court or its processes, or which obstructs the administration of justice." (Syl. ¶ 2.)

Although the district court demonstrated its patience with plaintiff and extended to her the privilege of purging herself of contempt prior to imposition of sentence, and while we do not condone her conduct, we think the district court erred in imposing the sentence which it imposed. As previously indicated, plaintiff was guilty of indirect civil contempt, the punishment for which is remedial and for the benefit of the complainant—here, the defendant. Punishment for civil contempt is ordered where the party has refused to do an affirmative act required by the provisions of an order, which, either in form or in substance, is mandatory in its character. In such a case, imprisonment is not inflicted as punishment, but is intended to be remedial by coercing the party in contempt to do what he has refused to do, and the proper sentence is that the party in contempt stand committed unless and until he performs the affirmative act required by the court's order. (*In re Burrows, Petitioner*, 33 Kan. 675, 681, 7 Pac. 148; *In re Pierce, Petitioner*, supra; *Barton v. Barton*, supra, [l. c. 729]; *Smith v. Clothier*, supra, [l. c. 52]; *Wohlfort v. Wohlfort*, 116 Kan. 154, 163, 164, 225 Pac. 746; *Davison v. Davison*, 125 Kan. 807, 817, 266 Pac. 650; *Johnson v. Johnson*, 148 Kan. 682, 685, 686, 84 P. 2d 888; *Gompers v. Bucks Stove & Range Co.* 221 U. S. 418, 31 S. Ct. 492, 55 L. ed 797, 34 L. R. A. [N. S.] 874; *United States v. Mine Workers*, 330 U. S. 258, 67 S. Ct. 677, 91 L. ed. 884.) It seems clear to us that the district court imposed a sentence which was wholly punitive and

we therefore hold it could have been properly imposed only in a proceeding instituted and tried as for criminal contempt. As stated by Mr. Justice Lamar in *Gompers v. Bucks Stove & Range Co.,* supra, "The result was as fundamentally erroneous as if in an action of 'A. vs. B. for assault and battery,' the judgment entered had been that the defendant be confined in prison for twelve months."

The Gompers case, *supra,* is one of the leading and recognized authorities with respect to the distinction between civil and criminal contempt. In that case the court considered and made a very clear analysis of that distinction, as follows:

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' . . . It is not the fact of punishment but rather *its character and purpose that often* serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. . . .

"For example: If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless these were special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in *In re Nevitt,* 117 Fed. Rep. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.

". . . If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience."

.   .   .   .   .   .   .   .   .   .   .   .   .

"The distinction between refusing to do an act commanded,—remedied by imprisonment until the party performs the required act; and doing an act forbidden,—punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment." ·

.   .   .   .   .   . ·   .   .   .   .   .   .   .

"There is another important difference. Proceedings for civil contempt are between the original parties and are instituted and tried as a part of the main cause. But on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause. . . ."

The sentence imposed was unqualified and contained no provision for plaintiff's release should she purge herself of contempt—it did not permit her to unlock the door of the county jail and discharge herself by doing what she had previously refused to do. There was therefore a departure—a variance—between the indirect civil contempt proceedings adopted and the punishment imposed—a punitive sentence appropriate only to a proceeding for criminal contempt. The result is the sentence imposed upon plaintiff was erroneous, and it is therefore set aside. Not all of the proceedings in the district court were void. That court had jurisdiction of the subject matter and of the plaintiff. The judgment of conviction of contempt has been determined to be valid, and plaintiff stands before that court as she did on June 27, 1956. Whether plaintiff is now complying with the child custody and visitation order and has thus purged herself of contempt is not before us. That is a matter for inquiry by the district court. The sentence imposed upon plaintiff on June 29, 1956, is ordered set aside and the judgment as herein modified is affirmed.

It is so ordered.