NOT DESIGNATED FOR PUBLICATION

No. 122,603

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF

SARAH R. LEMING (nka OLMSTEAD),
*Appellee*,

and

JUSTIN E. LEMING,
*Appellant*,

(CANDACE LEMING),
*Respondent*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR and JEFF DEWEY, judges. Opinion filed June 18, 2021. Affirmed.

*Julia A. Leth-Perez*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

No appearance by appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and MCANANY, S.J.

PER CURIAM: This is another chapter in the continuing struggle a district court is experiencing in trying to induce Justin E. Leming to comply with a property division order in his divorce. Leming has yet to comply with a court order that has been upheld twice on appeal. While trying to provide a means of support for four children whose mother is terminally ill and whose father is serving a long prison sentence, the court has

1

been met at every step with nothing but concealment and a lack of cooperation. After two judges have entered monetary sanctions against him, Leming brings this appeal raising questions of jurisdiction and authority. Our review leads us to hold that the court had the authority to order sanctions, and we affirm the orders of the court.

Sarah R. Olmstead (f/k/a Leming) filed for divorce in 2015 after their daughter finally told her that Leming had been sexually abusing her throughout the years since she had started school. Leming is now in prison for aggravated indecent liberties with his daughter. There have been several appeals to this court in this case. We need not repeat everything that was said in the prior opinions, but we will summarize to provide a historical context.

Olmstead was diagnosed with terminal breast cancer and told that she only had a few years to live. She depends on child support to care for the parties' four children. She has appeared pro se at many hearings over several years to enforce the property division entered in 2016. She wants to ensure her children are taken care of after her passing.

In that 2016 judgment, the district court ordered that Leming's $87,696.59 share of the marital assets be liquidated and put into an account that Olmstead could use for child support. In other words, the court awarded Leming's share of the marital assets to Olmstead. After all, Leming was incarcerated and could not pay much child support, and she could draw from Leming's share for support.

Leming appealed and this court affirmed that division because of Leming's "gross and extreme actions involving one of the children, the need for child support, [Olmstead's] illness, and the lack of other resources." But the court remanded the case for recalculation of the *amount* of child support Leming owed. *In re Marriage of Leming*, No. 115,915, 2017 WL 1426051, at *3-4 (Kan. App. 2017) (unpublished opinion). The mandate for execution of that judgment was filed in November 2017.

2

On remand Judge Kevin O'Connor, in 2018, recalculated Leming's child support obligation. But the court was "at a loss" to learn the account for Olmstead was never established. The court ordered the liquidation of Leming's assets and the establishment of that account within 30 days "or the Court will consider sanctions for that not being done." That order was journalized in May 2018, without mention of the sanctions.

Leming's attorney asked for more guidance on the court's ruling—"what I understand you are saying today is that Ms. Olmstead gets the judgment. We don't need a trust. We don't need accounts. It just needs to be paid; is that fair?" The court agreed and again ordered the $87,696.59 be paid to Olmstead. The court gave Leming seven more days "and on the eighth day, I will start imposing sanctions if that doesn't happen, sanctions in the amount of $100 a day." The court's order of sanctions was not journalized.

Leming then gave notice that he was appealing the May 2018 judgment and "related directives from hearings on April 6, April 11, and June 6, 2018." A docketing notice was filed in the district court on July 20, 2018.

On appeal, Leming argued the district court abused its discretion by modifying its distribution of marital assets. In August 2019, a panel of this court denied Leming's appeal because the district court's distribution of assets had remained the same since 2016, and the law of the case prevented Leming from challenging it in his second appeal. *In re Marriage of Leming*, No. 119,700, 2019 WL 3850617, at *4 (Kan. App. 2019) (unpublished opinion), *rev. denied* 312 Kan. 892 (2020).

In October 2019, the case returned to the district court, this time in front of Judge Jeff Dewey. Leming still had not complied with the court's order that he transfer $87,696.59 to Olmstead. The court appointed Leah Gagne as guardian ad litem for the parties' children to help find Leming's assets. The court noted that the $100 per day

3

sanction Judge O'Connor had imposed was not journalized. The court did not impose Judge O'Connor's sanction retroactively but did "not restrict the petitioner from bringing this issue before Judge O'Connor or otherwise raising this issue, as allowed by law."

The court ordered that Leming begin the liquidation of his assets and place them in a trust or cooperate with the GAL in marshaling and liquidating the assets. The court ordered Leming to make a full disclosure of the nature, location, and other details of his assets and execute the documents necessary to carry out the court's order. The court imposed a $100 per day sanction for every day Leming had not complied with its order beginning November 2, 2019, until such time that he complied. On November 26, 2019, Judge Dewey extended the compliance date until December 10, 2019.

Judge O'Connor then heard the GAL's motion to journalize his June 2018 order of sanctions. The judge noted there had been "a shocking disregard for Court orders" by Leming. "[I]t has been ignored since day one, so what Mr. Leming does is continue to victimize his family which is shocking also to the Court." The court stated the sanction it imposed was an order, not a suggestion. The court clarified that it had not found Leming in contempt. Instead, the court had an inherent ability to order sanctions when a party disregards a court order. The court found that Leming needed to figure out a way to comply with its orders and that telling the court the marital assets no longer existed did not constitute compliance.

On January 14, 2020, the journal entry of the $100 per day sanction beginning June 13, 2018, was filed. The court found Leming owed on that day $58,800 in sanctions. The court entered judgment against Leming in that amount.

Leming now appeals the court's October 24, 2019, November 26, 2019, and January 14, 2020 orders. He brings three arguments. He contends that the court lacked subject matter jurisdiction to impose monetary sanctions. Next, he argues the court

4

abused its discretion because it had no authority to order sanctions. Leming then argues that he was deprived of due process by not receiving proper notice and a chance to be heard. But first we must address an issue raised by this court's motion panel.

*Is Judge Dewey's order appealable?*

After the appeal was docketed with this court, the motions panel issued an order to show cause why our jurisdiction should not be limited to the journal entry filed on January 14, 2020. The order stated:

> "The record indicates the journal entry of final judgment was filed on November 26, 2019, but the notice of appeal was not filed until February 13, 2020, beyond the 30-day limitation of K.S.A. 2019 Supp. 60-2103(a). The notice of appeal was timely as to the journal entries filed on January 14, 2020."

The issue is whether both Judge Dewey's and Judge O'Connor's sanction orders are two distinct final decisions under K.S.A. 2020 Supp. 60-2102(a)(4). If Judge Dewey's sanction order was a final decision on November 26, 2019, then this court lacks jurisdiction to review that order because Leming did not file a notice of appeal until February 13, 2020.

The law on this point is well established. An appeal may be taken to this court as a matter of right from a "final decision" in an action. K.S.A. 2020 Supp. 60-2102(a)(4). A final decision generally disposes of the entire merits of a case and leaves no further questions or the possibility of future directions or actions by the district court. *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015). An appeal may be taken within 30 days from entry of the final judgment. K.S.A. 2020 Supp. 60-2103(a). "No judgment is effective unless and until a journal entry or judgment form is signed by the judge and filed with the clerk." K.S.A. 2020 Supp. 60-258.

5

The two sanction orders are different orders entered by different judges and it is not clear how they interact together. Judge Dewey clarified that his $100 per day sanction continued until Leming provided an explanation about where his assets were or what happened to them. In other words, tell us where the assets are. In contrast, Judge O'Connor made clear that his sanction continued until Leming figured out a way to pay Olmstead the $87,696.59. Judge O'Connor's January 2020 journal entry was merely a reflection of his June 2018 order. Judge Dewey ordered sanctions more than a year later. As a result, the orders could be viewed as distinct final decisions.

But the reason for the hearing in front of Judge Dewey and his subsequent order on the issue of sanctions was the prior verbal order by Judge O'Connor. In September 2019, Olmstead asked the court to confirm Judge O'Connor's sanction in a written order, to calculate the sanctions owed to date, and for a judgment in that amount. In ruling on that motion, Judge Dewey imposed his $100 per day sanction going forward, while specifically leaving open the issue of retroactive sanctions. Judge O'Connor's subsequent order dealt with the retroactive sanctions.

Given this history and the purpose of K.S.A. 2020 Supp. 60-2102(a)(4), it is inappropriate to require Leming to appeal both orders in a piecemeal fashion. Thus, it appears Judge O'Connor's January 2020 order is the final decision, and this appeal is timely. We will proceed accordingly.

*The court could impose sanctions while an appeal was pending.*

Leming argues the district court lost jurisdiction over the case on June 26, 2018, when he filed the notice of his previous appeal. Thus, he argues, the district court could not order sanctions or order him to liquidate his assets.

6

The district court ordered Leming to liquidate his assets in 2016, and that order was affirmed on appeal. The mandate in that case was filed in 2017. The district court did not order sanctions until 2018. The issue is whether the district court could try to enforce its order that Leming liquidate his assets and turn them over to Olmstead while Leming pursued a second appeal. The answer is yes.

District courts have jurisdiction to enforce a domestic judgment while the case is pending on appeal. *In re Marriage of Fisher*, No. 93,761, 2006 WL 2043015, at *9-10 (Kan. App. 2006) (unpublished opinion). In *Fisher*, after the appellant docketed his appeal of the final judgment in his divorce case, the district court held Terry Fisher in contempt for failure to pay the court judgment awarding property equalization and maintenance to his former wife. On appeal, Fisher argued the district court lost jurisdiction to enforce its judgment by holding him in contempt once he had filed and docketed his appeal. A panel of this court disagreed. The court held that while Fisher "certainly had the right to file a supersedeas bond to prevent enforcement" of the judgment, he chose not to file the bond. The court held the district court had jurisdiction to hold Fisher in contempt for failure to pay the domestic judgment. 2006 WL 2043015, at *9-10.

While divorce cases are pending on appeal, the duty to support is still in effect. *Gordon v. Gordon*, 218 Kan. 686, 692, 545 P.2d 328 (1976). A spouse does not waive his or her right to appeal by paying child or spousal support under threat of sanction by the court for failure to do so. See *Martin v. Phillips*, 51 Kan. App. 2d 393, 400, 347 P.3d 1033 (2015).

When a divorce decree directs the payment of money and the division of property between the parties, a party may post a supersedeas bond pending appeal. *Goetz v. Goetz*, 181 Kan. 128, 133, 309 P.2d 655 (1957). A supersedeas bond preserves the status quo

pending an appeal while assuring satisfaction of the judgment. *Fisher*, 2006 WL 2043015, at *9.

This case is an example of why such a bond is required. In 2016, when the court's judgment dividing the marital property was filed, Leming had some $87,000 in assets available for liquidation. But since that time Leming's attorney cannot explain what happened to the assets. The record does not show that Leming posted a supersedeas bond or obtained a stay of the district court's judgment. Thus, that judgment could be enforced even while the case was pending on appeal.

*The court had the inherent authority to sanction.*

Leming contends the district court lacked any legal authority to sanction him in this way. He argues the sanctions cannot be viewed as a penalty for contempt of court because no contempt procedures were ever followed in making the sanction orders.

Appellate courts review a sanction order for abuse of discretion. The district court necessarily abuses its discretion if it makes a legal error. We accept the district court's factual findings if substantial evidence supports them. *In re Marriage of Wilson*, 43 Kan. App. 2d 258, 261-62, 223 P.3d 815 (2010).

Apart from its contempt power and without some statutory authority, Kansas courts possess an inherent power to sanction when "reasonably necessary for the administration of justice, provided these powers in no way contravene or are inconsistent with substantive statutory law." The court's sanction power extends to conduct outside the litigation including "as a means of enforcing obedience to a law which the court is called on to administer." The sanction power may be used when a party uses the process "to harass, delay, or achieve other improper ends." See *Pener v. King*, 305 Kan. 1199, 1210-11, 391 P.3d 27 (2017).

Especially pertinent here, it has been said that the sanction power may be used when a party exhibits a pattern of obstructive behavior to deter the party from continuing that behavior. See *Comprehensive Health of Planned Parenthood of Kansas & Mid-Missouri, Inc. v. Kline*, 287 Kan. 372, 423-25, 197 P.3d 370 (2008). And courts have the inherent power to sanction for bad faith conduct. *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 926, 128 P.3d 364 (2006).

For example, in *Wilson*, this court upheld a decision by the district court to sanction the husband in a divorce case $30,000 to be paid to the wife because he had intentionally deceived the court about his income and assets. 43 Kan. App. 2d at 262. Then, in *Larson Operating Co. v. Petroleum, Inc.*, 32 Kan. App. 2d 460, 464, 471-72, 472, 84 P.3d 626 (2004), this court upheld a $10,000 sanction against a party for discovery abuses under the court's inherent power to sanction.

Here, the record reeks of Leming's continued bad faith conduct. Judge Dewey found that Leming was not being forthright with the court or his counsel because Leming had failed to disclose his assets to comply with the court's order. Judge O'Connor found that Leming had shown a "shocking disregard" for the court's orders to "victimize his family." We hold the district court had the legal authority to impose a monetary sanction on Leming.

*We find no due process violation in these sanctions.*

Leming contends the district court violated his due process rights by imposing a financial sanction without giving him proper notice or an opportunity for a full hearing with him present. He complains that he is incarcerated and lacks resources to respond to the court's complaints.

We want to emphasize one point. A court's inherent power to sanction a party should be used with restraint and caution, and only after proper notice and an opportunity for a hearing on the record. In other words, a court must comply with the mandates of due process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Wilson*, 43 Kan. App. 2d at 270.

We also note that the right of a prisoner to be heard in a civil action can be achieved with a prisoner appearing in person, pro se, or through counsel. See *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1029, 686 P.2d 171 (1984).

This record discloses that Leming had notice and an opportunity to be heard prior to the imposition of these sanctions. Leming was not personally present at those hearings. He was in prison. Thus, unlike other cases, the court did not sanction him based on statements he made when asked about his assets.

But Leming did have sufficient resources to hire an attorney to represent him at all such hearings. At a hearing in April 2018, the court gave notice that it would consider ordering sanctions if Leming did not comply with the court's order to liquidate his assets and turn them over to Olmstead. Leming did not comply. At the next hearing on June 6, 2018, Judge O'Connor announced on the record that he was imposing a $100 per day sanction if Leming did not comply in seven days. Leming's attorney was present and could have objected to the sanction. Leming's attorney was present at the later hearing in front of Judge Dewey and again had a chance to argue against imposition of a sanction. And Leming's attorney was present at the last hearing in front of Judge O'Connor.

After all, Leming had a chance to present evidence concerning the assets he was supposed to turn over—that was the whole point. The court asked his counsel for evidence. Leming, through his attorney, could have brought in records showing where the

10

money was or where it went. But he never did. Instead, he (through his attorney) would not explain to the court what happened to his assets at several hearings over several years.

Leming has not shown that the district judges abused their discretion.

Affirmed.