No. 34,704

THE STATE OF KANSAS, *Appellee,* v. STERLING SCHUMAN, *Appellant.*

(100 P. 2d 706)

Opinion filed April 6, 1940.

*John A. Etling* and *W. N. Beezley,* both of Kinsley, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, and *Harold R. Fatzer,* county attorney, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a prosecution under the prohibitory liquor law. Defendant was charged and convicted for unlawful possession of intoxicating liquor. He was sentenced as a persistent violator.

Defendant's first complaint concerns the exclusion of the evidence of one of his witnesses. In order to understand the contention, it is necessary to state a few preliminary facts. The information charged defendant with the unlawful possession of intoxicating liquor on July 29, 1939. The theory of the state was that defendant and one Bernard Fahlsing were partners in the unlawful possession of the liquor. Fahlsing and the defendant operated a garage, or salvage shop, as partners in the town of Kinsley, Edwards county, and at that time also maintained a residence together and divided the expense of maintaining the residence. Liquor was found in both the shop and residence as a result of raids made by the officers on that date. In the residence the liquor was found in a good-sized cabinet or cooler which the parties have referred to as a "crusher." It was called a crusher by reason of the fact that there was constructed in the cabinet, and above the place where the bottles were located, a heavy weight which could be released from outside of the cabinet. When the weight was released it would crush the bottles into small pieces and permit the crushed glass and the liquor to flow into a funnel and from the funnel into the sewer. The wife of Fahlsing testified for the state in the case against the defendant, Schuman. Her testimony was to the effect that Fahlsing and the defendant operated the residence as partners, dividing the expense of its maintenance. When the officers raided the shop, defendant attempted to get to the liquor ahead of the officers, but the officers

thwarted the attempt. The officers next raided the residence. They took defendant with them. Defendant attempted to get to the crusher ahead of the officers, but was resisted by the officers. They found whisky and alcohol in the crusher and wine under a table in the kitchen.

Appellant does not contend the evidence was insufficient to sustain a conviction on the charge of possession. We need, therefore, not further discuss the sufficiency of the evidence. Appellant's complaint pertains to the exclusion of evidence offered by a defense witness to the effect that in the year 1937 whisky was found in the same house when it was occupied by Bernard Fahlsing, prior to the time defendant was living in that property. His theory as to the competency of that evidence was that this was a circumstantial evidence case and that any evidence which showed or tended to show liquor had been kept in the residence by Bernard Fahlsing prior to defendant's occupancy of the building with Fahlsing should have been admitted for the purpose of determining whether some other person than the defendant might have had possession of the liquor found in the same house on July 29, 1939. The court excluded the evidence on the ground there was a gap in the occupancy of the residence by the Fahlsings between 1937 and 1939 and that the evidence was too remote. A ruling on the competency of evidence, based upon remoteness, ordinarily rests in the discretion of the trial court and will not be reversed unless it clearly appears the ruling constituted an abuse of sound judicial discretion. (*State v. Wimer*, 97 Kan. 353, 155 Pac. 7; *Bank v. Abbott*, 104 Kan. 344, 179 Pac. 326; *State v. Barr*, 84 Vt. 38, 77 Atl. 914; 16 C. J. 561, Criminal Law, § 1087; 20 Am. Jur. 243, Evidence, § 249.)

The evidence on the question of whether Bernard Fahlsing occupied the residence in 1937 was conflicting. Fahlsing's wife had testified Bernard Fahlsing was not living there in 1937. Assuming Fahlsing did occupy the residence in 1937, the issue was not whether Fahlsing was guilty of the unlawful possession of liquor in 1937, but whether the defendant, Schuman, was in the unlawful possession of intoxicating liquor on July 29, 1939. Mere proof that there was liquor in the residence building in 1937, even if then occupied by Fahlsing, did not constitute proof that Fahlsing and the defendant did not have joint possession of other liquor found in the residence which was under their joint control in July, 1939. No attempt was made by defendant to show that the liquor found in the residence in

1939 was the same liquor as that seen in the residence in 1937. In fact, the evidence definitely disclosed it was not the same. In 1937, according to the excluded testimony, a small quantity of *alcohol* and *wine* was seen in the residence. There was no testimony that *whisky* was ever seen in the residence building in 1937. On July 29, 1939, whisky was found at both the salvage shop and residence, in addition to wine and alcohol. The mere evidence that there was some wine and alcohol in the residence building in 1937, without further proof of its ownership or possession, did not afford a reasonable presumption or inference that the *whisky* found in a crusher located in the residence in 1939 belonged to Fahlsing alone, and that defendant had no interest in or control thereof at a time when the building was in the joint control of the defendant and Fahlsing. Since the excluded evidence afforded no reasonable presumption or inference that any of the liquor, and especially the whisky, found in 1939 belonged to Fahlsing alone, it was properly excluded. (20 Am. Jur. 242, Evidence, § 248.) On the other hand, if it could be said the excluded evidence was relevant at all for the purpose offered, its relevancy was too slight and inconsequential for this court to reverse the judgment on the ground the trial court abused its discretion in excluding it. That is especially true in view of the fact the excluded evidence pertained only to the liquor found in the residence building in 1937. In the instant case, whisky and other liquor was also found in the salvage shop. That evidence alone, under the circumstances narrated, was sufficient to sustain the charge of possession. Under all these circumstances, we cannot say the exclusion of the evidence concerning liquor in the residence in 1937 affected the substantial rights of the defendant. It follows that even if technically it could be said the excluded evidence should have been admitted, this court cannot reverse the judgment. (G. S. 1935, 62-1718.) In passing, we may also note that the state's case was not confined solely to circumstantial evidence.

The only other complaint concerns the overruling of defendant's motion for a new trial. The complaint pertains to the alleged misconduct of the juror, Alvin Ploger. On the motion for a new trial, defendant produced two witnesses who testified concerning alleged conversations with the juror prior to the trial. One of those witnesses was Lester Hartwig, an employee in the salvage shop. That witness previously had been convicted of violating the prohibitory liquor law. His testimony was to the effect that the juror, shortly

after defendants had been arrested, had told him, Hartwig, that he was certain in his own mind the boys were guilty and that he thought they would be found guilty. That witness' was present during a part of the trial and knew Ploger had been selected as a juror. He didn't know why he had not advised the defendant or his attorney concerning Ploger's statement until after the trial had been completed.

The other witness was Carl Livengood. That witness was also an employee in the salvage shop, or garage. He had testified as a defense witness in the trial. He knew Ploger was a juror. He had not notified the defendant or his attorney concerning the juror's alleged statement to him until after the trial. He testified he had given the juror's statement no consideration until a day or two after the trial. His testimony was to the effect that Ploger had told him, in the presence of Hartwig, that he, Ploger, thought that if the boys were not guilty they would not be in court and that he thought they would be convicted. After these witnesses had testified in support of the motion for a new trial, the state was unable to locate the juror. After waiting for some period of time to locate the juror, the court overruled the motion for a new trial. Thereafter the juror was located. Upon being advised concerning the testimony of the two witnesses, it appears the juror insisted upon filing an affidavit to refute the testimony of those witnesses. He filed such an affidavit, but we need not consider it.

, Defendant insists there was no conflict in the evidence on his motion for a new trial and, as the record stands, the juror was clearly guilty of misconduct and the trial court was required to grant a new trial. It is, of course, true that evidence cannot be disregarded. It must be considered. It is, however, equally true that a court or jury is not required to believe or accept as conclusive the testimony of a witness or witnesses merely because there is no direct evidence to contradict the testimony. (*Smith v. Lockridge,* 145 Kan. 395, 65 P. 2d 345; *Kallail v. Solomon,* 146 Kan. 599, 72 P. 2d 966; *State v. Stephens,* 146 Kan. 660, 72 P. 2d 975; *Johnson v. Johnson,* 148 Kan. 682, 685, 84 P. 2d 888.) The only logical interpretation we can place upon the order overruling the motion for a new trial is that the trial court did not believe defendant's witnesses. It was the province of the trial court to believe or to disbelieve them. It was not only the right, but the positive duty of the trial court to consider

the source, character and plausibility of the testimony of those witnesses, in view of all the circumstances. It was also its duty to consider the character and reputation of the witness or witnesses, as disclosed by the record. If the trial court did not believe their testimony, it was its duty to sustain the verdict. The fact these witnesses were employees in a shop operated by Fahlsing and the defendant, the fact they knew Ploger was a member of the jury, and made no complaint to anyone concerning his alleged statements until after the trial was completed and the defendant was convicted, certainly must have impressed the trial court as being highly unusual and that their testimony was probably the result of an afterthought. Their demeanor, conduct and appearance when testifying may have convinced the trial court beyond all doubt that they were not speaking the truth concerning the juror.

Defendant is also in error in his contention that the testimony of these witnesses was uncontradicted. The testimony of defendant's witnesses was contradicted. The testimony of defendant's witnesses in support of the motion for a new trial does not constitute the entire record in this case. It is admitted by stipulation that the juror, on his *voir dire*, was asked whether he had formed or expressed any opinion concerning the guilt or innocence of the defendant, and that the juror stated he had not formed or expressed any opinion on the subject. The trial court had a right to believe the juror's statement on his *voir dire* which was in direct conflict with the testimony of defendant's witnesses on the motion for a new trial. It appears the trial court was entirely satisfied with the juror and the verdict. Under such circumstances we would not be justified in disturbing the verdict.

We think this defendant had a fair trial, and the judgment is affirmed.