No. 46,629

State of Kansas, *Appellee*, v. Lloyd Dean Hill, *Appellant*.

(498 P. 2d 92)

Opinion filed June 10, 1972.

*James M. Immel*, of Immel & Immel, of Iola, argued the cause and was on the brief for the appellant.

*Mitchell H. Bushey*, county attorney argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from a conviction for aggravated robbery as set forth in K. S. A. 1970 Supp. 21-3427. On the basis that the defendant was denied due process of law the defendant made timely motions to dismiss and to suppress evidence, objected to admission of evidence at trial, and moved for a new trial, all of which motions and objections were denied by the court.

On September 14, 1970, John Hardie and his wife, while traveling from Joplin, Missouri, to Colorado Springs, Colorado, stopped their

convertible to give a ride to a stranger who had apparently wrecked a car. They were on U. S. Highway 54 between Ft. Scott and Iola. The man talked to them for about ten minutes, then placed a knife at Mr. Hardie's throat. He took $40.00 from Mrs. Hardie's purse and Hardie kept driving. Hardie crashed his automobile into an outdoor refrigerator at Gas, Kansas, in a successful attempt to escape his assailant.

Mrs. Hardie gave a description to the Iola sheriff, as she saw the assailant for a longer period than did her husband. He was reported to be wearing dark trousers, a light T-shirt, long dark hair, had the appearance of an an Indian male, and was approximately in his middle twenties.

Just after midnight of the same evening the defendant was arrested while prowling around an apartment house in Iola. He was intoxicated. On September 15, 1970, defendant was sentenced to ten days in jail at Iola for being drunk in public by the city court.

On the same day, September 15, the sheriff at Iola mailed a mug shot of the defendant to Mr. Hardie in Colorado. It was sent following a telephone call by the sheriff to the Hardies in which he told them he had a suspect and asked if they would return to Iola to identify him. Hardie replied he could not unless he had something more to go on. The mug shot was forwarded without any letter or comment and was unaccompanied by other photos.

On September 21, 1970, the sheriff received a phone call from Hardie and was informed that the person in the picture was similar to the assailant. Arrangements were made for Hardie to visit Iola on September 22, 1970.

Just before Hardie's arrival, on the 22nd, Judge Norton appointed John Foust as attorney for defendant Hill after finding him to be an indigent. Foust discussed having a lineup, but none was held as no arrangements had been made and no people who resembled defendant were available. Foust told the sheriff Hardie could either go to the jail or view Hill in a lineup. Hardie arrived at 2:30 p. m., saw Hill at about 4:00 p. m., and left town at 4:50 p. m. to catch a plane in Kansas City. This time limitation influenced the manner in which the confrontation was held.

Prior to going to the jail to see Hill, Hardie sat in the sheriff's office for nearly two hours where he learned the suspect's name, that he had a prior criminal record, and was suspected by police of a car theft.

The confrontation was held at the Allen county jail in the presence of the sheriff and Attorney Foust. Hardie was taken to interview a single person whom he identified as the assailant.

On October 9, 1970, a preliminary hearing was had where Hill was represented by Charles Forsyth. Hardie again identified Hill as the assailant. Mrs. Hardie also identified Hill and testified that she, too, had seen the mug shot sent by the sheriff to Colorado. She further revealed that her husband told her the defendant had a criminal record and several tattoos.

Defendant's attorney moved to exclude testimony from the Hardies about identification, on grounds that there was no lineup and identification was tainted due to the police procedures followed in this case. The motion at the preliminary hearing was overruled.

Arraignment was had on November 11, 1970. A plea of not guilty was entered. Counsel was appointed on November 25, 1970, as Hill had no means with which to employ counsel. A motion for change of venue was filed on December 24, 1970, and overruled January 4, 1971. On January 18, 1971, a hearing was had on a motion to dismiss and motion to suppress evidence. After hearing evidence the court overruled both motions. The Hardies testified at the hearing how they identified Mr. Hill and stated that a positive identification was not made from the photograph.

Trial was held on May 26, 1971, after defendant had been sent to the Larned State Hospital at Larned, Kansas, on February 17, 1971, for a determination of his mental competency. A jury verdict of guilty was returned on May 27, 1971.

The defendant summarizes his position on appeal in the following language:

"Defendant first submits that the failure to appoint counsel for the defendant until September 22, 1970, although he was in jail and suspected of the Hardie robbery, denied him his constitutional right to counsel and denied him due process of law during a critical stage of the investigation in this matter. Defendant further submits that the identification procedures followed by investigating authorities relative to the identification of the defendant by John Rex Hardie and Linda Hardie were conducted in such a manner as to violate due process of law and to deny the defendant certain fundamental rights guaranteed by the Constitution of the United States and rendering the identification evidence inadmissible. Furthermore, these violations of due process so tainted the proceedings against the defendant herein as to make it impossible for him to receive the fair and impartial trial to which he was entitled and he was, as a result thereof, denied a fair and impartial trial. . . .

"Defendant's contention is essentially that the identification procedures followed by the sheriff's office in investigating this case were so unnecessarily suggestive and prejudicial to the defendant as to constitute a denial of due process and there is a high degree of probability that the identification of the defendant by Mr. and Mrs. John Rex Hardie is in error as a result of the procedures followed."

In support of these contentions, defendant cites these authorities: *United States v. Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California*, 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *Stovall v. Denno*, 388 U. S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *Simmons v. United States*, 390 U. S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967; and *Mason v. United States*, 414 F. 2d 1176 (D. C. 1969).

In *Wade*, the court held that a post-indictment identification made without benefit of counsel was a confrontation made at a critical period in the prosecution and was a denial of the Sixth Amendment guarantee of assistance of counsel.

In *Gilbert*, the court held that an identification lineup without notice to counsel was a violation of the Sixth Amendment right to counsel at a critical stage and in-court identification was tainted because it was not shown that the in-court identification was made from independent sources.

In *Stovall*, the defendant had fatally stabbed a doctor and stabbed his wife, resulting in major surgery to save her life. Two days later, a Negro suspect was brought to her hospital room without affording him time to retain counsel. The wife identified him as her assailant. The court found the defendant was not deprived of due process of law saying:

". . . However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, and the record in the present case reveals that the showing of Stovall to Mrs. Behrendt in an immediate hospital confrontation was imperative. The Court of Appeals, *en banc*, stated, 355 F. 2d, at 735,

"Here was the only person in the world who could possibly exonerate Stovall. Her words, and only her words, " 'He is not the man' " could have resulted in freedom for Stovall. The hospital was not far distant from the courthouse and jail. No one knew how long Mrs. Behrendt might live. Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that Mrs. Behrendt could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room. Under these circumstances, the usual police station line-up, which Stovall now argues he should have had, was out of the question." (p. 302.)

In *Simmons*, photographs were shown to the victim prior to accusation and prior to trial. There were some photographs in which

Simmons and others were shown the victim and the court held the defendant's constitutional rights to have an attorney present at the identification from photographs was not violated. The court said:

"Applying the standard to this case, we conclude that petitioner Simmons' claim on this score must fail. In the first place, it is not suggested that it was unnecessary for the FBI to resort to photographic identification in this instance. A serious felony had been committed. The perpetrators were still at large. The inconclusive clues which law enforcement officials possessed led to Andrews and Simmons. It was essential for the FBI agents swiftly to determine whether they were on the right track, so that they could properly deploy their forces in Chicago and, if necessary, alert officials in other cities. The justification for this method of procedure was hardly less compelling than that which we found to justify the 'one-man lineup' in *Stovall v. Denno,* supra." (pp. 384, 385.)

In *Mason,* a bank teller identified a single photograph of a defendant and the court held the photographic identification was inadmissible in that it was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

The testimony on which defendant Hill was convicted was an in-court identification by John Rex Hardie and Linda Hardie. The proper manner of handling in-court identification was explained in *Clemons v. United States,* 408 F. 2d 1230 (D. C. 1968).

"[4] Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event. If the judge regards only the in-court identification as admissible, in the trial to the jury thereafter, the defense may, as a matter of trial tactics, decide to bring out the pre-trial confrontation itself, hoping that it can thus detract from the weight the jury might otherwise accord the in-court identification." (p. 1237.)

In this case, Linda Hardie testified at the preliminary hearing:

"Q. Now Mrs. Hardie I am going to ask you to take your time and answer this question. Do you see this man in this Courtroom?

"A. Yes, Sir I do.

"Q. Now, you had a good chance to look at him, did you not?

"A. Yes, Sir I did.

"Q. And you were turned around and looking at him for quite a little— (interrupted)—

"A. Yes, Sir.

"Q. (continuing) time before you pulled into the gas station?

"A. Yes, Sir.

"Q. Would you say how many minutes, Mrs. Hardie?

"A. I would say about ten minutes.

"Q. That you had been actually been looking at him?

"A. Yes.

"Q. Now did you say you see this man in this court room? Will you point him out, please?

"A. Yes, that is him right there in the yellow shirt (indicating).

"Q. The man there (indicating). Now, I would like to ask that the record show that the witness pointed to the Defendant, Lloyd Dean Hill. Are you positive of this?

"A. Yes, I am."

Mrs. Hardie further stated that she had seen a picture of the defendant before making the identification in court and that she could not give a positive identification from the picture. On cross-examination of Mrs. Hardie, in connection with her identification, she testified as follows:

"Q. Well, if you were so upset, how can you be positive about the other identification, which is tougher?

"A. Because, I set in that car and looked at that man for ten minutes, and I know that is the man."

At the hearing on motion to suppress evidence and motion to dismiss, Mrs. Hardie testified:

"Q. And would the fact that you had seen a picture have influenced— (interrupted)

"A. No, I made no definite conclusions.

"Q. Well, will you just state in your own words as well as you can, why you identified him, and what you based that identification on?

"A. Well, when this person got in the car with us, it was—we had our top down, and it was a moonlight night, and I was just turned around in the car seat there talking to him and I could really see him almost as well as I could see you. And I turned around and talked to him for, oh, five, maybe ten minutes, and then after he pulled the knife on my husband, I could still turn around and see him. So I had, I feel excellent opportunity to remember him."

Also, at the hearing on motion to suppress evidence and motion to dismiss, Mr. Hardie testified as follows:

"Q. And what in your opinion was that identification based on?

"A. Well, that identification was based on my, what I remember the man as being that got in our car that night, and committed this, compared to the man that they had in jail.

"Q. And was that from a physical view, from looking at him?

"A. Yes, it was.

"Q. Did you also talk to him at that time?

"A. Yes, I did.

"Q. Did you recognize his voice?

"A. Yes, I did. I said that his voice was, sounded the same to me as the man's that night did."

Although not entirely clear, we believe the record discloses that the quoted testimony was repeated in substance at the trial in the district court.

It can be argued that the testimony of John Rex Hardie was tainted by cellblock confrontation. We must give significance, however, to the fact that defendant's counsel was present at the time and agreed that such a procedure be followed. Since counsel can waive his presence at a lineup identification (*State v. Coleman,* 206 Kan. 587, 481 P. 2d 1008), it should follow that he could also waive the defendant's right to a lineup identification. We cannot say the court erred in failure to suppress Mr. Hardie's testimony in view of these circumstances.

Some justification existed for sending the photograph to the victims in view of the distance between the residence of the victims and Iola, Kansas. We do not condone, however, the sending of a single photograph since the law enforcement officers could easily have sent several other photographs. We recognize it would have been impossible for the victims to return to Iola on each occasion the officers requested an identification. We accept the officer's testimony that a meaningful lineup identification would have been difficult to set up under the circumstances. We also recognize the photograph was sent in the investigation stage rather than in the accusatory stage. We are impressed by the fact the victims made several trips to Iola at considerable expense and inconvenience under circumstances which could not result in any material gain to them.

These facts are reviewed in connection with the claimed violation of due process by the officers in the confrontation conduct in this case. We believe the totality of the circumstances as defined in *Stovall,* justifies the acts of the officers in this arrest and conviction, at least to the extent that we cannot say the defendant was denied due process of law.

In *Clemons,* the court held that, "In-court identifications may be found capable of standing on their own feet even though preceded by deficient pretrial confrontations." (Syl. ¶ 8.) We believe the mailing of one photograph to the victims of a crime for identifi-

cation is a deficient pretrial confrontation. Linda Hardie did not identify the defendant from the photograph. Her in-court identification was based on her full opportunity at the time of the crime to observe the defendant. As we see her identification, it was independent of the photograph incident.

The judgment is affirmed.