No. 46,535

STATE OF KANSAS, *Appellee,* v. SHERMAN L. KELLY, *Appellant.*

(499 P. 2d 1040)

Opinion filed July 19, 1972.

*Arthur E. Palmer,* of Goodell, Casey, Briman, Rice and Cogswell, of Topeka, argued the cause and was on the brief for appellant.

*Gene M. Olander,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: The appellant, Sherman L. Kelly, was convicted by a jury on October 28, 1970, of two counts of rape (K. S. A. 1971 Supp. 21-3502), one count of aggravated sodomy (K. S. A. 1971 Supp. 21-3505), and two counts of aggravated burglary (K. S. A. 1971 Supp. 21-3716). A motion for new trial was overruled on November 13, 1970, and he was sentenced under the Habitual Criminal Act. (K. S. A. 1971 Supp. 21-4504.)

On August 3, 1970, prior to the filing of the original complaint in

the magistrate court, a lineup was conducted at the Shawnee County jail by Topeka Police Department Detectives Howard Stanley and Ross Riggs. The appellant was present in the lineup along with six other subjects. The suspects were approximately the same age and size and were dressed in a similar fashion. Prior to the actual lineup for identification by some eleven witnesses, each witness was given a lineup card to be marked at the close of the viewing. The identification cards had a place to write the witness' name and to mark each suspect if recognized by the witness, and a place to mark if no one in the lineup was identified. All witnesses were directed not to speak during the viewing of the suspects. If a witness wanted a particular suspect to say or do a particular act, the request was to be made in writing so it could be documented and given to one of the detectives conducting the lineup. After all were viewed in the lineup, the witnesses were directed to the library of the county attorney's office to mark their cards.

The appellant's counsel was present during the entire viewing of the suspects; however, he was excluded from the marking of identification cards in the library. At the trial, the district court held an *in camera* hearing to inquire into the procedures followed subsequent to appellant's counsel being excluded from the marking of the lineup cards. The record shows counsel was present when the witnesses were instructed how to mark their cards. At that point he was asked to leave. Detective Stanley testified that after appellant's counsel was excluded, the cards were picked up. During the time up until the cards were marked and picked up, no discussion was had between the witnesses and the authorities as to any particular suspect in the lineup. The cards marked by witnesses Donna Houston and Marilyn Hines showed an identification of the appellant, and statements were taken from them at that time.

The district court ruled the lineup procedure did not violate the appellant's constitutional rights, and permitted the state to question Detective Stanley as to the lineup identifications by Miss Houston and Mrs. Hines. That evidence was then admitted over the objection of the appellant. Moreover, the district court ruled that the identification of the appellant in court by Miss Houston and Mrs. Hines was based upon an on-the-scene recognition of the defendant independent of the lineup identification on August 3, 1970.

The appellant contends it was error for the district court to admit evidence of the lineup identification of him by Miss Houston and

Mrs. Hines because his counsel was excluded from the marking of the identification cards after the viewing had been completed. In short, he asserts he was denied an opportunity to insure that the entire lineup procedure was fair and impartial. The point is not well taken.

The court has held that a claimed violation of due process in the conduct of a lineup confrontation depends upon the totality of the circumstances. (*State v. Hill,* 209 Kan. 688, 498 P. 2d 92.) See, also, *Stovall v. Denno,* 388 U. S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. The facts need not be reiterated. When the lineup was held, adversary judicial criminal proceedings had not been commenced against the appellant. (*Kirby v. Illinois,* _____ U. S. _____, _____ L. Ed. 2d _____, _____ S. Ct. _____.) However, it is sufficient to say the record supports a conclusion the lineup procedures in this case were not deficient. In addition to counsel being present to protect the appellant's rights when the lineup was conducted and the explanation was made as to how the identification cards were to be marked, the district court made lengthy inquiry into the proceedings after appellant's counsel was excluded. Without further statement, we hold the district court did not err in concluding the appellant's constitutional rights were not violated by the lineup in question.

In addition, it must be pointed out that both Miss Houston and Mrs. Hines made in-court identifications of the appellant, and the district court declared those identifications independent of the lineup identifications. In *State v. Hill,* supra, it was held:

"Even though identification procedures are suggestive, due process of law is not denied a defendant when the totality of the circumstances justifies the action taken by the law enforcement officers.

"In-court identifications may be found capable of standing on their own feet even though preceded by deficient pretrial confrontations." (Syl. ¶¶ 2, 3.)

Under such circumstances, the in-court identifications would be capable of supplying the requisite identification regardless of any alleged deficiency in pretrial confrontations. See *Clemons v. United States,* 408 F. 2d 1230 [D. C.].

The appellant next contends the district court erred in overruling his motion at the conclusion of the state's evidence for acquittal on the count of aggravated sodomy because the necessary element of penetration of the body of Miss Houston was not established.

Before a verdict of guilty, which has been approved by the district court, may be set aside because of insufficiency of evidence, it must clearly be shown that upon no hypothesis whatever is there

substantial evidence to support the conclusion reached by the district court. (*State v. Brizendine*, 114 Kan. 699, 220 Pac. 174; *State v. Murphy*, 145 Kan. 242, 65 P. 2d 342; *State v. Gregory*, 191 Kan. 687, 383 P. 2d 965; *State v. Hale*, 207 Kan. 446, 485 P. 2d 1338; *State v. McCollum*, 209 Kan. 498, 496 P. 2d 1381.)

This court is of the opinion the test was met in the instant case as there was a basis in the evidence for a reasonable inference that the element of penetration had been proven. Miss Houston testified on cross-examination and on redirect examination:

"THE COURT: All right, cross?"

"Q. Isn't is possible that there was not an actual penetration while you were on the floor?

"A. I am almost positive there was.

"Q. But you are not absolutely convinced, are you?

"A. Yeah, more or less, yeah. I could feel it; it hurt.

"Q. Miss Houston, there is no medical evidence to substantiate that part of your testimony though, is that correct?

"A. Not that I know of, no.

"Q. So it is only based on your feelings then that you are testifying that there was an actual penetration?

"A. I guess you could say so.

"Q. In all fairness to the jury, you would have to admit there was a possibility that there was no actual penetration even though your assailant may have been on top of you on the floor, isn't that true, penetration of the body?

"A. In my opinion, I really—in my opinion I couldn't say that there was— I mean that there wasn't.

"Q. All—

"A. But in the doctor's view, maybe, yeah.

"Q. But in your opinion you can't say for sure that there was an actual penetration on the floor?

"A. Well no, I can't, because I don't have any medical knowledge."

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"Q. Miss Houston, you stated on cross-examination that you weren't absolutely sure that he achieved penetration in your rectum; is that correct?

"A. Yes.

"Q. What are you basing your testimony on that you were—that he did achieve penetration in your rectum?

"A. The pain.

"Q. The pain?

"A. Yes, it hurt.

"Q. And could you tell us where the position—you said he had you lie on the floor face down?

"A. Yes.

"Q. Could you tell us where his body was in relation to yours at the time you felt the pain?

"A. It was on top of me, directly on top of me."

It is clear that a jury could conclude the appellant was guilty of aggravated sodomy from the uncontroverted facts that he was on top of the victim and she felt pain in her rectum. The contention is without merit.

Lastly, the appellant argues the district court erred in refusing to permit him to personally cross-examine Miss Houston concerning her testimony. While this question is one of first impression in this state, the great weight of authority is that a defendant's right to participate with counsel in the conduct of his defense is not a constitutional guaranty but is within the sound discretion of the district court to permit or deny. See Anno. Right of defendant in criminal case to conduct defense in person, or to participate with counsel, 77 A. L. R. 2d 1233; A. L. R. 2d Later Case Service, Supplementing 73-78 A. L. R. 2d; *People v. Bales*, 189 Cal. App. 2d 694, 11 Cal. Rptr. 639, cert. den. 368 U. S. 866, 7 L. Ed. 2d 64, 82 S. Ct. 116; *Strosnider v. Warden*, 245 Md. 692, 226 A. 2d 45. This court adopts the rule and holds that a defendant's right to participate with counsel in the conduct of his defense is within the sound discretion of the district court.

The district court made inquiry into the reasons why the appellant sought to personally question the witness and concluded that his lack of legal education and interrogation in the trial context might prejudice his constitutional rights. Under the facts and circumstances, we are of the opinion the district court acted within its discretion in denying the appellant an opportunity to personally cross-examine Miss Houston.

The judgment is affirmed.