No. 46,655

STATE OF KANSAS, *Appellee*, v. JOHN M. KEARNS, *Appellant*.

(505 P. 2d 676)

Opinion
filed January 20, 1973.

*John C. Humpage*, of Humpage and Stewart, of Topeka, argued the cause, and was on the brief for the appellant.

*John Mike Elwell*, county attorney, argued the cause, and *Vern Miller*,

attorney general, and *Jerry L. Donnelly,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This a companion case to *State v. Roberts,* 210 Kan. 786, 504 P. 2d 242). Although tried separately, the appellant John M. Kearns and his colleague John Doyle Roberts were each convicted of the same two counts of grand larceny, on substantially identical testimony. Each was represented by the same attorney, who made virtually the same contentions on behalf of each both at trial and in this court.

In *Roberts* we reversed and remanded for a new trial because of the trial court's failure to instruct on petty larceny. The same result must be reached here. The evidence here is likewise susceptible to a reasonable inference that the two $27 drills forming the basis of count I were *not* stolen at one time or as a result of one continuing criminal impulse. The same may be said of the 76 record albums charged under count II. Since none of the items under either count had a sufficient value to make its theft alone grand larceny, an instruction on petty larceny was called for. For a discussion of the "single larceny" doctrine as applied to the facts in this case the reader is referred to *State v. Roberts,* supra.

Our opinion in *Roberts* in large part disposes of appellant's contentions here, but some require additional comment. The most important of these is that the drills and records were the products of an allegedly unlawful search and seizure, and were therefore erroneously admitted into evidence. Roberts was held to lack standing to raise this issue because he claimed no proprietary or possessory interest in either the merchandise or the car from which it was taken—he was just a passenger. Kearns, our appellant here, was the owner and driver of the car. His standing is not questioned.

A little after 6:00 p. m. on November 6, 1969, Officer Miguel B. Garcia of the Lawrence police stopped appellant's car because he was looking for a white-over-blue Cadillac. Such a car had been described to him as the getaway car in the theft of some shoes from a local shoe store earlier that day. Although appellant emphasizes that when the initial contact was made the officer was operating on "mere suspicion," he does not seriously contend that there was anything unlawful about this bit of routine police work.

The propriety of such preliminary investigation was recently recognized in *Adams v. Williams,* 407 U. S. 143, 32 L. Ed. 2d 612,

92 S. Ct. 1921. There, referring to *Terry v. Ohio,* 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, the Court said (407 U. S. at 145-6):

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' *Id.,* at 22. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.,* at 23. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

The officer's investigation here led to a number of developments. Appellant first jumped out of his car and came back to the police car. The officer, not to be forestalled, approached appellant's car with appellant in tow and observed through the window, without entering: (1) a number of shoes thrown on the back seat; (2) two electric drills, unwrapped and bearing price tags, on the floor behind the driver's seat; and (3) a stack of 83 record albums, likewise bearing price tags, on the front seat between the driver's seat and that of his passenger, Roberts.

Inquiry revealed that appellant had no driver's license, and that both appellant and Roberts disclaimed ownership of or any interest in the merchandise. Neither knew how it all came to be in the car.

Still treading cautiously, Officer Garcia called for help. He secured the attendance not only of another officer but of the clerk from the victimized shoe store, who identified appellant and Roberts as the persons who had fled with the missing shoes. He also identified the shoes.

We think it inescapable that at this point Officer Garcia had probable cause to believe that the drills and records were stolen—mingled as they were with shoes known to be stolen, and in the possession of identified thieves who disclaimed them. Cf. *State v. Undorf,* 210 Kan. 1, 499 P. 2d 1105; *State v. Frizzell,* 207 Kan. 393, 485 P. 2d 160, and cases cited therein.

That being so, the drills and records were subject to seizure, either then and there or later at the police station. *Chambers v. Maroney,* 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975. Here, with appellant's permission, the car was driven to the police station; there the merchandise was removed.

Under the authorities cited, and many others which could be, the

seizure of the drills and records was not unreasonable. (It may be noted that there was no "search" for these items, as they were at all times in plain view and "the eye cannot commit a trespass.") *(State v. Frizzell,* supra, at 398.) They were therefore properly admitted into evidence.

After their identification as the shoe stealers appellant and Roberts were arrested on that charge and taken to the police station for booking. During the booking process Robert Zimmerman, the owner of the Lawrence Coast-to-Coast store, was summoned to the station to identify the drills, which were thought to have come from his store. While there he saw appellant and Roberts at the far end of a room he passed through and someone—he can't remember who—indicated that the pair was being booked for stealing the drills. At trial Zimmerman identified appellant as having been in his store late in the afternoon of the day of the arrest, in the general area where the two drills were customarily displayed. Appellant contends this identification should have been supressed as the result of an impermissible one-to-one confrontation, citing *United States v. Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California,* 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; and *Stovall v. Denno,* 388 U. S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.

The difficulty with appellant's position is that there was no "lineup" and no "confrontation." At a pretrial hearing on appellant's motion to suppress Zimmerman testified that, while his glimpse of the two suspects at the police station may have jogged his memory, his identification of appellant was definitely based on what he saw in his store, and not on what he saw at the police station. This alone would have rendered the identification testimony admissible even if there had been some taint to it. *State v. Kelly,* 210 Kan. 192, 499 P. 2d 1040; *State v. Hill,* 209 Kan. 688, 498 P. 2d 92. In addition, it is clear that such encounter as there was came about inadvertently, and not through any solicitation, ruse or scheme of the police. Zimmerman thought the information that appellant and Roberts were suspects came to him from a non-police connected source—he wasn't sure. Further, although the exact time of the incident does not appear in the record it does appear that Zimmerman was at the police station "that evening," following appellant's arrest at about 6:30 p. m. See *State v. Kress,* 210 Kan. 522, 502 P. 2d 827; *State v. Meeks,* 205 Kan. 261, 469 P. 2d 302, and cases cited.

These factors—the short interval of time, the inadvertence, the independent in-court identification—together lead us to conclude that Zimmerman's identification of appellant was properly received.

Appellant also urges that there was a fatal variance between pleading and proof in that the information charges that the drills belonged to "Bob" Zimmerman, while the proof showed the owner to be "Robert" Zimmerman. To invalidate a conviction a variance must be material, so as to mislead the accused. *State v. Johnson,* 189 Kan. 571, 370 P. 2d 107; *State v. Earley,* 119 Kan. 446, 239 Pac. 981; *State v. Wahl,* 118 Kan. 771, 236 Pac. 652. We cannot conceive of appellant's having been surprised to learn that "Robert" was the true name of a person referred to as "Bob," especially since "Bob" Zimmerman was further identified in the information as the owner of the Coast-to-Coast store.

Finally, appellant urges that he should have been discharged because the original complaint before the county court, upon which an arrest warrant was issued, was insufficient because it was conclusory in form and was cast in the language of the statute. Whatever its deficiencies, the complaint had spent its force when a preliminary hearing was held and the magistrate made the necessary findings to bind appellant over for trial. For a full discussion of this proposition see *State v. Addington,* 205 Kan. 640, 643-5, 472 P. 2d 225. The district court had jurisdiction to try the appellant and correctly overruled his motion to discharge.

All other issues are disposed of in *State v. Roberts,* supra. The judgment is reversed and the case is remanded for a new trial.

APPROVED BY THE COURT.