No. 46,708

STATE OF KANSAS, *Appellee,* v. FRANCIS EDWARD CALVERT, *Appellant.*

(505 P. 2d 1110)

Opinion filed January 20, 1973.

*Michael M. Moran,* of Wichita, argued the cause, and was on the brief for the appellant.

*Keith Sanborn,* County Attorney, argued the cause, and *Vern Miller,* Attorney

General, and *Larry Kirby*, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant appeals from convictions by a jury of two counts of robbery in the first degree. (K. S. A. 21-527, now K. S. A. 1972 Supp. 21-3426, 21-3427.)

On the morning of February 23, 1970, a man entered the Wichita office of the Public Finance Corporation. He was approached by the cashier, Phyllis Johnson, who offered her help. The man produced a handgun and said: "Yes, I want the money. I want all of it." The office manager, Mr. Donald Hogan, produced money from the safe and from two cash drawers and delivered it to the robber, who left the premises. According to the witnesses the robbery took from two to four minutes. At the trial, Hogan, Johnson and Jerry Trabell, assistant manager of the corporation office, identified the defendant as the robber.

On the morning of March 7, 1970, Georgia Williams, a sales clerk employed at Duckwall's Store located in the Westlink Shopping Center in Wichita, reported to work by entering the back room of the store through an unlocked outside door. When she entered she saw a man standing on a stairway leading from the back room to the second floor office. The man was holding a handgun and said: "This is a holdup." He forced Mrs. Williams to remain standing on the stairway. A second man was already in the store office on the second floor. Shortly thereafter, the store's assistant manager, Jerry Orebaugh, entered the back room from the sales floor. One of the men pointed a gun toward Orebaugh's face and told him: "This is a holdup." Witnesses noted that one robber was considerably taller than the other. The shorter of the two robbers forced Orebaugh to go to the upstairs office and deliver the store's money. The taller man stayed on the stairs and kept a gun on three female sales clerks, who had gathered in the back room in the meantime. Two of the clerks and Orebaugh were taken to the store's basement. Orebaugh and one of the clerks were bound and the other clerks were ordered to go to the far end of the basement. At this point the robbers left the premises. At the trial defendant was identified as the taller of the two robbers by Orebaugh and Mrs. Williams.

In April 1970 defendant was placed in a lineup and viewed by witnesses of several robberies, including that of Duckwall's and

Public Finance Corporation. On June 29, 1970, a second lineup was held and defendant was again included. The defendant was the only person in both lineups. Several of the witnesses viewed both lineups. Defendant's counsel was present at both of the lineups. Following the second lineup (June 29, 1970), complaints were filed against the defendant charging him with the robberies of Duckwall's and Public Finance. It appears that defendant had been in custody on a charge of unlawful possession of a firearm (K. S. A. 1972 Supp. 21-4204) to which he entered a plea of guilty on July 27, 1970.

Defendant's first trial took place in division No. 1 of the Sedgwick district court, commencing on September 28, 1970. Prior to trial the court heard defendant's motion to suppress any evidence concerning the lineup identifications of defendant and to exclude prospectively any in-court identifications of defendant by witnesses who attended either or both of the lineups. In support of his motion defendant argued that the lineups were unconstitutionally suggestive and further that the state's refusal of defendant's counsel to be present during the postlineup interviews constituted a denial of defendant's right to counsel. After hearing the testimony of several witnesses, defendant's motion was denied.

The case then proceeded to trial. After calling six witnesses to testify in its case in chief the state rested. Whereupon defendant, in the presence of the jury, announced that he wished to change his plea from not guilty to guilty on count 2 of the information. The state announced that it would dismiss count 1. At this point the court interrogated defendant at length concerning the voluntariness of his plea and discussed with defendant the sentence which might be imposed.

Defense counsel requested that any sentence imposed be ordered by the court to be served concurrently with a sentence presently being served by defendant. The state offered no objection to defendant's request. The court further inquired of defendant whether he was aware that the question of concurrent or consecutive service of sentence was discretionary with the court. Defendant replied in the affirmative. Following this colloquy, the court announced that the service of sentence would be consecutive rather than concurrent with the sentence defendant was presently serving. At this point defendant objected and withdrew his plea of guilty to count 2, claiming that he had made a deal for concurrent service of sentence. Defendant's counsel also moved for a mistrial.

At this juncture, the court directed the defendant to take the stand and requested defense counsel to examine defendant concerning his claim of a deal for concurrent service. In the course of this interrogation matters pertaining to possible alibi evidence and other matters were injected in the unorthodox proceeding. Eventually, the court discharged the jury and declared a mistrial by reason of the fault of defendant.

Defendant's second trial was had in division No. 4 of the district court of Sedgwick county, commencing on October 16, 1970. Defendant was convicted on both counts. However, on December 10, 1970, defendant's motion for a new trial was sustained on the ground that defendant had been unable to secure the attendance of an alibi witness.

The trial, from which this appeal was perfected, was set for January 1971. In the meantime, the defendant again filed a motion to suppress evidence of lineup identifications and to exclude prospectively any in-court identifications of defendant by witnesses who had attended either or both of the lineups. This motion was heard and denied by the administrative judge of the district court. However, the administrative judge sustained a further motion of defendant to exclude evidence of prior offenses by defendant which might be offered by the state under K. S. A. 60-447 and 60-455.

Following these proceedings this third trial of defendant commenced on January 25, 1971, in division No. 7 of the district court. The jury rendered a verdict of guilty on both counts and defendant was sentenced under the Habitual Criminal Act (K. S. A. 1972 Supp. 21-4504) to imprisonment for terms of not less than twenty nor more than forty-two years on each count to be served consecutively.

Defendant specifies numerous points of error on appeal. He first contends the trial court erred in failing to sustain his motion for a new trial for the reason that the evidence failed to support the verdict on either count of the information. He states his position to be that the evidence, although legally adequate to support the jury's finding of guilt, was so lacking in convincing power that the trial judge should have been dissatisfied with the verdict and given the case to another jury. Defendant's challenge of the convincing power of the evidence is no more than an attack upon the weight of the evidence. As such, the defendant's argument does not merit serious consideration. This court has often said that it is the function

of the trier of facts, not that of a court of appellate review, to weigh evidence and pass upon the credibililty of witnesses. (*State v. Franklin,* 206 Kan. 527, 479 P. 2d 848; and *State v. Shaw,* 195 Kan. 677, 408 P. 2d 650.) Defendant was identified by three eyewitnesses as one of the robbers in the Public Finance robbery and by two eyewitnesses in the Duckwall robbery. His defense of alibi with respect to both robberies was based primarily on his own testimony. Obviously, the jury believed the state's witnesses and their testimony is clearly sufficient to support the verdict.

Next defendant attacks the admission of the testimony of the state's identification witnesses. As we have noted, defendant, prior to trial, filed a motion *in limine* to exclude identification at trial by any of the state's witnesses who participated in the lineup proceedings on two grounds—(1) that defendant was the only suspect present in both lineups and (2) defendant's counsel was not permitted to be present when the lineup witnesses were interviewed following the lineup proceedings. Defendant's contentions are without merit for several reasons. First, we find no showing of any incident in connection with either of the two lineups that would amount to substantial prejudice to any of defendant's constitutional rights. Second, as the state points out, even though the lineup proceedings might have been deficient, the in-court identifications in this case were capable of standing on their own feet. In the case of both robberies the witnesses were in close proximity to the defendant for at least three to four minutes and were able to describe his appearance in detail and with specificity. Their testimony convincingly demonstrates that the in-court identifications of defendant were based on the observations of defendant by the witnesses at the scene of the crimes.

In the recent case of *State v. Kelly,* 210 Kan. 192, 499 P. 2d 1040, we held:

"In-court identifications may be found capable of standing on their own feet even though preceded by deficient pretrial confrontations." (Syl. ¶ 2.)

In the *Kelly* case, as herein, complaint was made concerning the exclusion of defendant's counsel during the report of witnesses following the lineup proceedings. Under the circumstances there we found no error in the trial court's conclusion that defendant's constitutional rights were not violated. Likewise, we believe the record in the instant case supports the trial court's conclusion. We find nothing in the testimony of the identification witnesses, either

on direct or cross-examination, that suggests any occurrence during the witnesses' interview that would amount to prejudice of defendant's rights.

It should be further noted that in the instant case a complaint was first filed charging defendant following the second lineup on June 29, 1970. In other words, as pointed out in *State v. Kelly*, supra, when the lineup was held, adversary judicial criminal proceedings had not been commenced against the defendant. (*Kirby v. Illinois*, 406 U. S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877.)

Defendant's third point on appeal concerns the trial court's exclusion of certain circumstantial evidence offered by defendant to prove that a third person committed the robberies. The evidence consisted of a "mug shot" of one Richard Hicks and exhibits showing his conviction with that of Francis Sanders, the other robber and codefendant in the instant case, of a robbery in Wyandotte County, which occurred shortly after the robberies in the instant case. Defendant's offer of the evidence in question was an attempt to show that Sanders was working with Hicks and that Hicks was his accomplice in the instant robberies. The exhibits were excluded by the trial court and defendant assigns this ruling as error.

The state's case against defendant, in the instant trial, was constructed almost exclusively on direct evidence; namely, in-court identification of defendant by five eyewitnesses. The only circumstantial evidence relied upon by the state was the defendant's possession, sometime after the crimes, of a gun which was described by the state's witnesses as similar to that used in the instant robberies. Other than the "mug shot" proffer by defendant there was no evidence offered either by defendant or the state which in anyway tended to connect a third person with the commission of the crimes charged herein.

This court has been confronted with similar evidentiary questions in two recent cases wherein it was held that where the state's case is built on direct evidence, circumstantial evidence that someone other than the defendant committed the crimes is irrelevant in the absence of other evidence to connect such third person with the crimes. (*State v. Henderson*, 205 Kan. 231, 468 P. 2d 136; and *State v. Potts*, 205 Kan. 42, 468 P. 2d 74.) We hold that under the record before us exclusion of the exhibits offered by defendant was proper.

The defendant combines his arguments on points 4 and 5 which concern admission into evidence of exhibits showing defendant's

conviction of possession of a handgun after a felony conviction. On April 22, 1970, six weeks after the Public Finance robbery and two months after the Duckwall robbery, defendant entered a plea of guilty to the firearm possession charge. In the case at bar the evidence offered by the state in this connection consisted of exhibit 13, the handgun, and exhibit 14, the journal entry of conviction. Before admission into evidence all parts of the journal entry were deleted except the journalization of the guilty plea. Defendant challenged the admission of the two exhibits on two separate grounds. First, he argues the exhibits were not relevant because the date of possession April 22, 1970, was too remote in time and, second, that the handgun was not sufficiently identified as similar to that used in the robberies. Neither of the two arguments is meritorious. Exclusion of evidence for remoteness is a matter addressed to the trial court's sound discretion and the court's ruling with respect thereto will not be reversed unless the defendant's substantial rights were prejudiced. (*State v. Schuman,* 151 Kan. 749, 100 P. 2d 706.)

In this case the temporal span of two months and six weeks, respectively, for the commission of the two robberies charged is not so great as to conclusively impair the relevancy of defendant's possession of a handgun similar to the robbery weapon. In ruling on the matter, the trial court noted that several of the state's witnesses identified the gun used in the robberies as the same type as that of the handgun introduced. The trial court observed that the fact that defendant did possess a weapon of the same type as that used in the robberies was circumstantial evidence and not too remote in time to be irrelevant. We find no error in this regard.

Defendant's further objection to the admission of the exhibits concerns the trial court's order of defendant's pretrial motion *in limine*. In defendant's motion he moved for an order requiring the state to refrain from mentioning at anytime before the jury the following:

"1. That the defendant has been convicted of any prior crime pursuant to K. S. A. 60-447 and K. S. A. 60-455 upon showing the Court that the defendant had not been previously convicted of a like crime or a crime based upon fraud.
"2. That this motion has been made."

The part of defendant's motion concerning items one and two was sustained by the administrative judge. Defendant argues that the admission of exhibits 13 and 14 were in violation of this order. In

response to defendant's argument the state maintains that the exhibits in question were offered as a judicial admission as circumstantial evidence to prove a collateral fact under the provisions of K. S. A. 60-460 (g) rather than for any of the purposes set forth in the provisions of K. S. A. 60-447 or 60-455.

Possession of a weapon was a fact necessary to the state's case in the robbery charges. Since the handgun possessed on April 22, 1970, was described by several witnesses as similar to the handgun used in the robberies; the possession admitted by defendant in his plea of guilty was relevant on a fact issue in the robberies. When offered as proof for this purpose defendant's plea of guilty was admissible. Pleas of guilty are generally admissible as admissions of facts alleged in the information to which they relate. If such an admission aids in the proof of another offense, it is still admissible as substantive evidence in the case on trial. (*United States v. Andreadis,* 238 F. Supp. 802, [1965]; *United States v. American Packing Corp.,* 113 F. Supp. 223, [1953]; 4 Wigmore on Evidence [3d Ed.], Admissions in Other Litigation, § 1066, p. 52; Wharton's Criminal Evidence [12th Ed.], Confessions and Admissions, § 345, p. 25.) The rule is stated in these words in 22A C. J. S., Criminal Law, § 733, p. 1061:

"It is generally held that a voluntary plea of guilty on a prior trial or hearing, even for another offense, where the plea in effect admits certain facts which are relevant and material on the present trial, is admissible. . . ." (pp. 1065-1066.)

In short, exhibits 13 and 14 were relevant as circumstantial evidence to prove a fact in issue and were not offered for any of the purposes by the provisions enumerated in K. S. A. 60-447 or 60-455. This court has often held that evidence otherwise relevant in a criminal prosecution is not rendered inadmissible simply because it may show another or greater crime than that charged. (*State v. Pierce, et al.,* 208 Kan. 19, 490 P. 2d 584; and *State v. Crowe,* 207 Kan. 473, 486 P. 2d 503.)

In his next point defendant makes a two pronged complaint concerning the trial court's instructions. Defendant claims the trial court should have submitted a limiting instruction restricting the jury's consideration of exhibits 13 and 14, and further contends that the court improperly stated the law with respect to reasonable doubt.

In support of his first argument on this point, defendant relies on

the cases of *State v. Roth,* 200 Kan. 677, 438 P. 2d 58; and *State v. Jenkins,* 203 Kan. 354, 454 P. 2d 496. The *Roth* and *Jenkins* cases both dealt specifically with a trial court's duty to submit a limiting instruction with respect to evidence of prior convictions for similar crimes received for the purposes permissible under K. S. A. 60-455. *Roth* and *Jenkins* are not applicable in a situation where a plea of guilty in another case is submitted as a judicial admission by a party of a fact in issue in the case at trial. A plea of guilty is an admission of the acts which were the basis of the charge and is admissible under K. S. A. 60-460 (*g*), if relevant, to prove a fact in issue in the case on trial. (*Scogin v. Nugen,* 204 Kan. 568, 464 P. 2d 166.)

Defendant contends the trial court prejudicially stated the law in the instruction defining reasonable doubt. He centers his attack on that part of the instruction in which the trial court defined reasonable doubt "as doubt based upon some reason which arises out of the evidence or lack of evidence appearing in the case." Defendant concedes he is asking this court to overrule a long line of cases in which the same or similar formulation was approved. (See *State v. McLaughlin,* 207 Kan. 594, 485 P. 2d 1360; and *State v. Mae McLaughlin,* 207 Kan. 584, 485 P. 2d 1352, and cases cited therein.) Viewing instruction No. 8 as a whole we cannot say the jury was mislead as to the meaning of "reasonable doubt."

Defendant consolidates his arguments in support of his next three points, all of which concern his contention that his conviction on count 1 was barred by former jeopardy. He rests his arguments on the events surrounding the termination of his first trial. He contends that since the state had introduced its evidence, rested its case and then dismissed count 1 when he changed his plea of guilty on count 2, that jeopardy had attached with respect to count 1 and therefore the state was barred from amending count 1 and prosecuting on that charge in the subsequent trials. Defendant overlooks the fact that he moved for a mistrial following his withdrawal of his plea of guilty to count 2. Admittedly, the proceedings following defendant's motion for a mistrial were unorthodox, but we find nothing in the record in that regard which would alter defendant's position with respect to jeopardy on count 1. The trial court ultimately ordered a mistrial on defendant's motion and further noted the order was made because of defendant's fault.

Where a mistrial is declared with the consent or because of the

fault of the defendant, former jeopardy does not bar a subsequent prosecution. (*State v. Calhoon,* 198 Kan. 520, 426 P. 2d 157; *Kamen v. Gray,* 169 Kan. 664, 220 P. 2d 160; and *State v. Reynolds,* 140 Kan. 269, 36 P. 2d 323.) The record in the case at bar plainly demonstrates that the mistrial was declared both with the defendant's consent and through his fault as found by the trial court.

In connection with the amendment of the information, we held in *Kamen v. Gray,* supra:

". . . Defendant cannot thereafter plead former jeopardy when placed on trial on an amended information for the same offense, having requested and consented, by his former action, to waiver of his constitutional privilege." (Syl.)

Defendant next contends the trial court erred in prohibiting the reading of the testimony of Darlene Coffee who had testified for defendant as an alibi witness at his second trial. After the state rested, defense counsel informed the court that Miss Coffee had called and advised him that she would not be able to appear on the orders of her doctor. On this ground defendant's counsel moved to allow the witness's prior testimony to be read to the jury. The state resisted the motion and after hearing arguments the court ruled that, as a necessary and sufficient condition for the admission of the prior testimony, the witness's doctor should call the prosecutor and satisfy him as to the excuse for the witness's failure to appear after being subpoenaed. Later, in the course of the trial, the witness called the court. The court advised the witness to have her doctor call defense counsel. The doctor did not call the court, the prosecutor or defense counsel; consequently her prior testimony was not admitted.

Defendant's counsel argues that his efforts satisfied the "reasonable diligence" rule of *State v. Washington,* 206 Kan. 336, 479 P. 2d 833. The rule in *Washington,* in simple terms, is that prior testimony is admissible upon a proper showing that the witness is unavailable and cannot, by the exercise of "reasonable diligence," be produced at the trial.

In the instant case, the trial court established a simple and easily satisfied condition precedent in order to determine that the witness was in fact unavailable. A proper showing was not made and thus we find no error in the trial court's refusal to permit the reading of the testimony.

Defendant finally complains of conduct of the prosecutor in

connection with his examination of witnesses called in rebuttal by the state. We have carefully examined the record in this regard and find that even though the prosecutor attempted to solicit inadmissible hearsay evidence, defendant's objections were promptly sustained. We find nothing in this regard sufficient to warrant the granting of a new trial.

No prejudicial error has been shown and the judgment of the trial court is affirmed.